# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

JAGJEEVAN K. DHALIWAL, etc.,

               Plaintiff,

   vs.

NIRMAL SINGH, et al.,

               Defendants.

_____/

CASE NO. CV F 13-0484 LJO SKO

**ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS AND TO STRIKE** (Doc. 6)

## PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before one of the Court's Magistrate Judges, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill

1

1  is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice,

2  and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.

3  Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to

4  U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge

5  consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District

6  of California.

7  **INTRODUCTION**

8  All defendants[1] seek to dismiss as inadequately pled and time barred plaintiffs Jagjeevan K.

9  Dhaliwal ("Mr. Dhaliwal") and Mohinder S. Gill's ("Mr. Gill's") claims arising out of their investments

10  in Stanislaus County gas stations/convenience stores.  Defendants further seek to strike portions of Mr.

11  Dhaliwal and Mr. Gill's (collectively "plaintiffs'") Complaint ("complaint").   Plaintiffs chastise

12  defendants as defrauding criminals and argue that their claims "merit retention at this stage of the

13  litigation."  This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss and F.R.Civ.P.

14  12(f) motion to strike on the record without a hearing.  *See* Local Rule 230(g).  For the reasons discussed

15  below, this Court DISMISSES the claims challenged by defendants.

16  **BACKGROUND**[2]

17  **Summary**

18  Mr. Singh is an ARCO AM PM ("AM PM") franchisee and developer who sought investors to

19  / / /

20  _____

21        [1]     Defendants are Nirmal Singh ("Mr. Singh"), Nachhattar Singh Chandi ("Mr. Chandi"), Susana Chandi

22  ("Ms. Chandi"), KS Chandi & Sons, Inc. ("Chandi & Sons"), Chandi Brothers, LLC ("Chandi Brothers"), and Valley Petroleum, Inc. ("Valley Petroleum") and will be referred to collectively as "defendants."

23        [2]     The factual recitation summarizes generally, and to the best of this Court's ability, the complaint and other

24  matters which this Court may consider.  The complaint is a hodge podge of allegations and recitation of legal authorities. In their opposition papers, plaintiffs appear to proffer first-time facts and unauthenticated documents not attached to the

25  complaint, which this Court is unable to consider.  "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion

26  to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998).  A court may not consider on a F.R.Civ.P. 12(b)(6) motion "materials not contained in or attached to the plaintiff's complaint." *Moore v. Powermatic, a Div.*

27  *of Stanwich Industries, Inc.*, 738 F.Supp. 1188, 1189 (N.D. Ill. 1990).  In addition, plaintiffs attempt to "re-allege and re-incorporate arguments" raised by other parties in another action, *Kevin Doan, et al. v. Nirmal Singh, et al.*, Case No. CV F

28  13-0531 LJO SMS.  Such attempt is unacceptable, and this Court will not consider such arguments in connection with the motions in this action.

partner with him and his brother and sister-in-law Mr. Chandi and Ms. Chandi,[3] to purchase and develop AM PM gas station/convenience stores.  The Chandis reside in Riverside County and with Mr. Singh own more than 10 California AM PM's.  Chandi & Sons, Chandi Brothers and Valley Petroleum are California corporations located in Turlock, California.  Mr. Singh is the chief financial officer ("CFO") and shareholder of Chandi & Sons and Chandi Brothers.  Plaintiffs are Canadian physicians whom invested in AM PM's at issue in this action.  The complaint alleges common law and statutory claims that defendants defrauded plaintiffs of $3.5 million to invest in AM PM's.  Defendants seek to dismiss plaintiffs' claims as time barred and lacking sufficient facts.

### Plaintiffs' Inducement

To induce plaintiffs to invest, Mr. Singh prepared forged articles of incorporation of Chandi & Sons which reflected that Chandi & Sons was authorized to issue 1,000 shares although the bona fide articles of incorporation reflect that Chandi & Sons was authorized to issue 2000 shares.  Plaintiffs were given the forged articles of incorporation and told that there were only 1,000 shares of Chandi & Sons and that plaintiffs were being sold half of the 1,000 shares.  Plaintiffs paid defendants monies in expectation of receipt of shares, equity and profits as explained in greater detail below.

### Plaintiffs' Claims

The complaint, filed April 3, 2013, alleges breach of contract, fraud, conversion and California and federal statutory claims which will be discussed in greater detail below.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants seeks to dismiss nearly all of the complaint's claims as lacking sufficient supporting facts and as time barred.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*,

---

[3]      Mr. and Ms. Chandi will be referred to collectively as the "Chandis").

3

1    250 F.3d 729, 732 (9th Cir. 2001).

2          In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

3    the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

4    can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

5    F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

6    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

7    *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

8    assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

9    *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

10   facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

11   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

12   459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

13   the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

14   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

15         A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

16   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

17   do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

18   omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most

19   favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*

20   *Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain

21   either direct or inferential allegations respecting all the material elements necessary to sustain recovery

22   under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers,*

23   *Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

24         In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

25   explained:

26              . . . a complaint must contain sufficient factual matter, accepted as true, to "state
            a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
27          plaintiff pleads factual content that allows the court to draw the reasonable inference that
            the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
28          akin to a "probability requirement," but it asks for more than a sheer possibility that a

                                                          4

1   defendant has acted unlawfully.  (Citations omitted.)

2       After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive

3   [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be

4   plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d

5   962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

6       The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

7           First, the tenet that a court must accept as true all of the allegations contained in
        a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
8       a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
        only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
9       . Determining whether a complaint states a plausible claim for relief will . . . be a
        context-specific task that requires the reviewing court to draw on its judicial experience
10      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
        more than the mere possibility of misconduct, the complaint has alleged – but it has not
11      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

12          In keeping with these principles a court considering a motion to dismiss can
        choose to begin by identifying pleadings that, because they are no more than conclusions,
13      are not entitled to the assumption of truth. While legal conclusions can provide the
        framework of a complaint, they must be supported by factual allegations. When there are
14      well-pleaded factual allegations, a court should assume their veracity and then determine
        whether they plausibly give rise to an entitlement to relief.

15

16  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

17      Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

18  the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

19  (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

20  dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision

21  Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

22      Lastly, a court may consider exhibits submitted with the complaint. *Durning v. First Boston

23  Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162,

24  n. 2 (C.D. Cal. 2003).  A "court may consider evidence on which the complaint 'necessarily relies' if:

25  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

26  party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d

27  445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may

28  assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States

5

*v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to defendants' challenges to the complaint's claims.

**Breach Of Contract**

*First Claim's Allegations*

The complaint's (first) breach of contract claim proceeds against Mr. Singh, Chandi & Sons and Chandi Brothers and alleges that:

1. Plaintiffs entered into a contract with Mr. Singh, Chandi & Sons and Chandi Brothers in November 2006 to invest $1,350,000 in return for "50% shares of the profit and 50% equity in the property and business";

2. Because defendants failed to return plaintiffs' monies prior to June 2007, plaintiffs entered into a contract with Chandi & Sons and Chandi Brothers in July 2007 to invest $1,350,000 "in exchange for an 8% interest on Plaintiffs' money for a period of 18 months." The claim references a July 20, 2007 Certificate of Investment ("COI") signed by Mr. Singh as CFO for Chandi & Sons and Chandi Brothers and to certify plaintiffs' $1,340,000 investment on November 22, 2006 with Chandi & Sons and Chandi Brothers for 18 months in a Modesto commercial property and secured up to $850,000 by a deed of trust on a Turlock property.  The COI commits Chandi & Sons and Chandi Brothers to pay eight percent interest each month and "a fixed profit of $200,000."

3. Mr. Singh as Chandi & Sons' owner executed a July 15, 2008 Promissory Note with Balloon Payment ("promissory note") to pay plaintiffs $1,350,000 "payable in monthly

---

[2] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

interest installments of $8933.00 calculated at an interest of 8% per annum, concluding with one Balloon Payment of the principal amount plus any interest and/or penalties outstanding." The promissory note states it "is secured by a Deed of Trust of Even Date herewith";

4.   "Defendants have breached the agreement by":

   a.   Defaulting on the promissory note by not making the December 2012 payment;

   b.   "[F]ailing to give Plaintiffs' 50% profit and equity" of Chandi & Sons and Chandi Brothers "from November 2006 to July 2007";

   c.   Not recording a deed of trust, pursuant to the promissory note;

   d.   Not recording a deed of trust against Turlock property, pursuant to the COI; and

   e.   Not recording a deed of trust against Turlock property, pursuant to a trust deed identified by only by its September 27, 2006 date.

### *Limitations Defense*

Defendants characterize the complaint's (first) breach of contract claim as "a confusing mix of allegations about various contracts" and which is barred by California Code of Civil Procedure section 339's two-year limitations period for oral contracts and California Code of Civil Procedure section 337's four-year limitations period for written contracts.

A written contract requires "a writing containing all terms and that the party to be charged have accepted it." *E.O.C. Ord, Inc. v. Kovakovich*, 200 Cal.App.3d 1194, 1201, 246 Cal.Rptr. 456 (1988). A "cause of action based upon a breach of contract accrues at the time of the breach." *E.O.C. Ord, Inc.*, 200 Cal.App.3d at 1203, 246 Cal.Rptr. 456.

Defendants argue that the November 2006 agreement and July 2007 COI are based on writings calling for immediate performance and thus were breached in 2006 and 2007, more than four years prior to the complaint's April 3, 2013 filing.

Defendants further point to the COI's 18-month investment running from November 22, 2006 to culminate in May 2008. As such, defendants point out that the four-year limitations period on a claim arising from the COI expired in May 2012, to render the complaint untimely to pursue such claim.

Turning to the promissory note, the complaint claims its balloon payment was due January 20,

7

2010 and "extended verbally month to month with monthly payments being made by Defendant Singh, until Defendants defaulted on February 1, 2013." However, the promissory note requires written modifications: "No oral modifications or waivers of this Agreement shall be binding upon the parties. All written modifications shall be in writing and signed and dated by both parties." The promissory note includes an integration clause that it "constitutes the sole agreement of the parties and supercedes all oral negotiations and prior writings with respect to the subject matter hereof." Defendants argue that in the absence of allegations of written modifications of the promissory note, the agreement represented by the promissory note was due no later than 18 months from the July 2007 COI or January 2009 to render the four-year limitations period expired in January 2013.

Plaintiffs offer no meaningful opposition to the limitations defense and merely note they "should be allowed to proceed to discovery and trial to ferret out the whole truth of how this swindle was staged and recover the funds needed for their health care."

Defendants are correct that the (first) breach of contract claim is "a confusing mix of allegations about various contracts." The claim reflects that plaintiffs turned over $1.35 million in November 2006 and entered into a series of vague transactions for which plaintiffs believed they were acquiring a 50 percent interest in each of Chandi & Sons and Chandi Brothers. Plaintiffs offer no enforceable writing to reflect such transaction or the precise terms to which they contend were agreed. This Court surmises the complaint is intentionally vague to attempt to avoid a limitations defense. Given its vagueness and susceptibility to a limitations defense, the (first) breach of contract claim is dismissed with leave to amend to allege precise facts delineating contract terms and breaches and the dates of contract terms and breaches. Failure to allege such facts with necessary precision will result in dismissal with prejudice of the breach of contract claim.

### Mr. Singh's Non-Party Status

Defendants contend that Mr. Singh is not subject to the complaint's (first) breach of contract claim in that the claim relies on writings to which only Chandi & Sons and Chandi Brothers are parties. Essential elements to contract existence are: (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) a "lawful object;" and (4) a "sufficient cause or consideration." Cal. Civ. Code, § 1550.

Plaintiffs offer no credible opposition to Mr. Singh's non-party status to agreements regarding

interests in Chandi & Sons and Chandi Brothers.  The limited, vague information available indicates that plaintiffs agreements ran with Chandi & Sons and Chandi Brothers and that Mr. Singh acted in his capacity as a corporate officer.  In the absence of support that Mr. Singh was a party to an agreement with plaintiffs, the (first) breach of contract claim is subject to dismissal with prejudice as to Mr. Singh.

***Second Claim's Allegations***

The complaint's (second) breach of contract claim alleges that:

1.   Plaintiffs entered into a contract in mid 2008 to lend Mr. Singh $177,500 to retrofit "the Glenwood ARCO AM PM (in which they already had shares in), interest free for two years";

2.   Mr. Singh promised to give 50 percent shares and equity in Chandi Sons and Chandi Brothers and "to return the principal $177,5000 within two years, and extended month to month per Defendant Singh's request"; and

3.   Mr. Singh "has breached the agreement by failing to return the principal of $177,500 to Plaintiffs in addition to their existing equity" in Chandi & Sons and Chandi Brothers.

Defendants characterize the complaint's (second) breach of contract claim to allege a time barred oral agreement which was entered into in mid 2008 and breached no later than mid 2010 to render the complaint's April 3, 2013 filing untimely to pursue the claim.

Plaintiffs offer nothing credible to support the (second) breach of contract claim.  This Court construes such absence of support as plaintiffs' concession that the claim is time barred.  Neither the complaint nor its inferences suggest that the claim is timely to render it subject to dismissal with prejudice.

**Money Had And Received**

The complaint's (third) money had and received claim alleges that "Defendants are obligated to pay $2,808,386 to Plaintiffs based upon money had and received."

A claim for money had and received may be brought "wherever one person has received money which belongs to another, and which in equity and good conscience, or in other words, in justice and right, should be returned.  The plaintiff's right to recover is governed by principles of equity, although the action is one at law." *Mains v. City Title Ins. Co.*, 34 Cal.2d 580, 586, 212 P.2d 873 (1949) (internal

1    quotations, citations and punctuation omitted).

2          Defendants challenge the claim's failure to satisfy F.R.Civ.P. 8 pleading requirements.

3          Plaintiffs respond that defendants received money intended for plaintiffs' benefit but was not so

4    used or returned to plaintiffs.

5                        ***F.R.Civ.P. 8 Requirements***

6          F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or

7    her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima

8    facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

9          F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement

10   "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)."

11   *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Moreover, a pleading may not simply allege a

12   wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair

13   notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States*

14   *Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of

15   the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the

16   claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

17   A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged

18   in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders

19   'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949

20   (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

21            While, for most types of cases, the Federal Rules eliminated the cumbersome
              requirement that a claimant "set out in detail the facts upon which he bases his claim,"
22            *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added),
              Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to
23            relief. Without some factual allegation in the complaint, it is hard to see how a claimant
              could satisfy the requirement of providing not only "fair notice" of the nature of the
24            claim, but also "grounds" on which the claim rests.

25   *Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

26         The money had and received claim fails to satisfy F.R.Civ.P. 8. The claim, notwithstanding the

27   complaint's other allegations, merely alleges that Mr. Singh wrongly took plaintiffs' money. The

28   complaint fails to provide fair notice and facts to support a money had and received claim. The money

1   had and received claim lacks sufficient particularity and offers mere blanket assertions.

2                                *Limitations Defense*

3          Defendants argue that a money had and received claim is barred by a two-year limitations period

4   in that the complaint designates plaintiffs' payments in 2006 and 2007.  *See Franck v. J. J.*

5   *Sugarman-Rudolph Co.*, 40 Cal.2d 81, 90, 251 P.2d 949 (1952) (applying California Code of Civil

6   Procedure section 339's two-year limitations period to a money had and received claim).

7          Plaintiffs offer nothing credible to support the timeliness of the money had and received claim.

8   This Court construes such absence of support as plaintiffs' concession that the claim is time barred.

9   Neither the complaint nor its inferences suggest that the claim is timely to render it subject to dismissal

10  with prejudice.

11                                **Conversion**

12         The complaint's (fourth) conversion claim alleges that "Defendants have embezzled and

13  converted the funds of Plaintiffs and the companies co-owned" by plaintiffs, Chandi & Sons and Chandi

14  Brothers "in the amount of $3,499,000."

15         Defendants fault the absence of allegations to support how and when funds were converted,

16  whose money was converted, and calculation of the $3,499,000 figure.  Defendants challenge plaintiffs'

17  standing to seek to recover funds allegedly converted from Chandi & Sons and Chandi Brothers.

18         Plaintiffs respond that defendants interfered with plaintiffs' property by refusing to return

19  plaintiffs' money, interest thereon, and profits from assets removed from Chandi & Sons and Chandi

20  Brothers.

21         "Conversion is the wrongful exercise of dominion over the property of another."  *Oakdale*

22  *Village Group v. Fong*, 43 Cal.App.4th 539, 543, 50 Cal.Rptr.2d 810 (1996).  "To establish conversion,

23  a plaintiff must show: (1) the plaintiff's ownership or right to possession to the property at the time of

24  conversion; (2) the defendant's conversion by a wrongful act; and (3) damages." *Oakdale Village Group*,

25  43 Cal.App.4th at 543-544, 50 Cal.Rptr.2d 810.  "Money cannot be the subject of a cause of action for

26  conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum

27  of money to be paid to another and fails to make the payment." *McKell v. Washington Mut., Inc.*, 142

28  Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227 (2006).  "A specific and identified amount of money can

form the basis of a conversion claim, but when the money is not identified and not specific, the action is to be considered as one upon contract or for debt and not for conversion." *Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1024 (N.D. Cal. 2008) (internal quotation omitted).

The complaint lacks facts as to the specific and identified amount of money converted from plaintiffs and precisely how it was converted. The calculation of the $3,499,000 figure is not alleged, unknown and thus neither specific nor identified. The (fourth) conversion claim is subject to dismissal, but out of an abundance of caution, leave is granted to amend the claim.

## **Fraud**

### ***Allegations***

The complaint's (fifth) fraud – intentional, (sixth) negligent misrepresentation, and (seventh) false promise claims allege that Mr. Singh, Chandi & Sons and Chandi Brothers misrepresented to plaintiffs that:

1.  With plaintiffs' $1,350,000 and "on November 22, 2006 and thereafter," plaintiffs would receive 50 percent or 500 shares of each of Chandi & Sons and Chandi Brothers and that Chandi & Sons articles of incorporation authorized a total of 1,000 shares;

2.  Mr. Singh owns 100 percent of the shares of Chandi & Sons and Chandi Brothers and is able to sell 50 percent of the shares "for an investment of $1,350,000";

3.  Plaintiffs' money "would be protected" with a deed of trust on Turlock real property where Mr. Singh "is a majority shareholder";

4.  Mr. Singh and Chandi & Sons "would return the $1.35 million plus any interest and penalties"; and

5.  Mr. Singh would return plaintiffs' $177,500 "which Defendant borrowed interest free and give the Plaintiffs 50% equity and shares" in Chandi & Sons and Chandi Brothers.

The fraud, negligent misrepresentation and false promise claims seek $3,742,886.

The complaint's (eighth) concealment claim alleges that defendants failed to disclose that:

1.  Defendants sold assets of Chandi & Sons and Chandi Brothers "without informing Plaintiffs nor [paying] Plaintiffs their due shares; and

2.  Defendants "had no intention of giving Plaintiffs security of their money as they had

1  promised as per the Promissory Note, Certificate of Investment, and notarized Deed of

2  Trust and in fact never recorded Deeds of Trust."

3  The concealment claim accuses Mr. Singh and the Chandis of shutting down a Turlock AM PM

4  in which plaintiffs owned 50 percent shares and moving it across the street to a facility owned by Valley

5  Petroleum, of which Mr. Singh is the sole owner to reduce plaintiffs' share and equity in the AM PM.

6  The concealment claim further alleges that Mr. Singh, without disclosing to plaintiffs, sold a Ceres AM

7  PM to the Chandis to steal "50% of the money Plaintiffs should have received from the sale" of the

8  Ceres AM PM at fair market value.

9  ***Elements***

10  Fraud elements for deceit are "(a) misrepresentation (false representation, concealment, or

11  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

12  justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th

13  951, 974, 64 Cal.Rptr.2d 843 (1997).

14  Negligent misrepresentation elements are "(1) a misrepresentation of a past or existing material

15  fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance

16  on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to

17  whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal.App.3d 954, 962,

18  226 Cal.Rptr. 532 (1986).

19  "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

20  specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

21  156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

22  the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

23  actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." 

24  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.

25  ***Particularity Pleading Standard***

26  Defendants fault the complaint's absence of specific allegations to support fraud-based claims.

27  / / /

28  / / /

13

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature of*

---

[3]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[4]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .   The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989).  "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*,

694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

Defendants fault the dearth of facts to support fraud claims given the complaint's limited allegations that Mr. Singh misrepresented on November 22, 2006 and thereafter that plaintiffs would receive 50 percent shares in Chandi & Sons and Chandi Brothers.  Defendants note the absence of facts of involvement or communications with or between the Chandis and plaintiffs and that the Chandis have neither met plaintiffs nor had dealings with them.  Defendants argue the fraud claims further rest on alleged misrepresentations "to unspecified people at unspecified times."  Defendants challenge the absence of facts to support fraudulent intent and to support plaintiff's alleged $3,742,886 damages.

Plaintiffs argue that the complaint satisfies F.R.Civ.P. 9(b) specificity.  Plaintiffs' opposition papers, but not the complaint, make references to defendants' secured loans from Altura Credit Union in an apparent attempt to allege that defendants "failed to disclose important facts that they had sold assets of the companies" and "had no intention of giving Plaintiffs security for their money as promised per the Promissory Note, Certificate of Investment, and notarized Deed of Trust."  Plaintiffs claim that Mr. Singh and the Chandis "concealed material facts as to precisely who the officers are, how many authorized shares were disbursed, the number and identity of shareholders, what assets belong to the companies, and who was receiving what distributions."

The complaint's (fifth through eighth) fraud claims fail to satisfy F.R.Civ.P. 9(b).  The fraud claims are a confusing mix of allegations of transactions which purportedly were not disclosed to plaintiffs.  The fraud claims appear premised on plaintiffs' November 2006 $1.35 million and 2008 $177,500 payments in return for expected 50 percent interests in Chandi & Sons and Chandi Brothers, which never materialized, to render fraudulent subsequent transactions of Chandi & Sons and Chandi Brothers.  The fraud claims are overbroad and vague and lack the precision and cohesion required by F.R.Civ.P. 9(b) to subject the fraud claims to dismissal.  Nonetheless, leave is granted to amend the fraud claims to allege precise facts delineating names of the persons who made the allegedly fraudulent representations or who concealed facts, their authority to speak or act for Chandi & Sons, Chandi Brothers and Valley Petroleum, to whom they spoke, what they said, wrote or concealed, and when it was said, written or concealed.  Failure to allege such facts with necessary precision will result in dismissal with prejudice of the fraud claims.

*Limitations Defense*

Defendants further challenge the fraud claims as barred by the three-year limitations period of California Code of Civil Procedure section 338(d) ("action for relief on ground of fraud") given the complaint's reliance on misrepresentations made in 2006. Defendants point to the absence of allegations of plaintiffs' discovery of fraud. Defendants note the complaint's allegations of defendants "not returning the Plaintiffs their monies by July 2007" to demonstrate facts of plaintiffs' knowledge of alleged fraud. Defendants conclude that the three-year limitations period for fraud expired no later than July 2010 and that no amendment or additional facts are able to save the fraud claims.

Plaintiffs point to no complaint allegations to address or toll the three-year fraud limitations period. In their opposition papers, plaintiffs claim they first learned in February 2013 that defendants "were not performing their promises" when defendants "stopped making the monthly payment." Plaintiffs further point to unidentified litigation apparently filed by Kevin and Pauline Doan (the "Doans") in November 2012 as a point of discovery of "the dispute regarding the shares and assets" of Chandi & Sons and Chandi Brothers. Apparently, that litigation revealed that defendants had obtained loans to purchase and develop AM PM's and which were secured by Chandi & Sons and Chandi Brothers assets.

Plaintiffs' points regarding discovery of alleged fraud are unclear. The complaint and its inferences reflect that plaintiffs paid $1.35 million in November 2006 and $177,500 in 2008 and were content to receive monthly payments until February 2013. Such facts and inferences fail to address the three-year limitations period and why it had not expired prior to the April 3, 2013 filing of the complaint.

In sum, the (sixth through eighth) fraud claims are subject to F.R.Civ.P. 9(b) failures and limitations defenses. Out of an abundance of caution, plaintiffs are granted leave to amend the fraud claims to attempt to supply credible facts to support elements of the fraud claims and facts to justify plaintiffs' delay to pursue the fraud claims sooner to avoid the limitations defense.

## California Corporations Code Section 25110

The complaint's ninth claim proceeds under California Corporations Code Section 25110 ("section 25110") and alleges that although plaintiffs owned 50 percent of the shares of Chandi & Sons and Chandi Brothers, in August 2011, Mr. Singh represented to the Doans that Mr. Singh owned 100

percent of the shares of Chandi & Sons and Chandi Brothers and sold 50 percent of the shares to the Doans "that are Unregistered and/or Not Exempt."

Section 25110 prohibits the offer or sale of a security in an issuer transaction unless the sale has been qualified under the California Corporations Code or is exempt and not subject to qualification under the California Corporations Code.  *See Bowden v. Robinson*, 67 Cal.App.3d 705, 711, 136 Cal.Rptr. 871 (1977).  Under Corporations Code section 25503 ("section 25503"), an available remedy for a section 25110 violation is the purchaser's recovery of consideration paid for the security with interest less income received therefrom.

Defendants fault the complaint's failure to allege a sale of an unregistered security or plaintiffs' damages in that the claim references the Doans' purchase.  Defendants further fault the section 25110 claim's failure to attribute wrongdoing to defendants other than Mr. Singh.  Defendants raise the two-year limitations period under California Corporations Code section 25507(a) to pursue section 25503 remedies.

Plaintiffs respond that defendants "sold these securities without qualifying them and . . . these securities are not exempt."  Plaintiffs continue that the Chandis are subject to liability in that as Chandi & Sons' and Chandi Brothers' officers, the Chandis knew or should have known of the securities sales.

The section 25110 claim suffers the same maladies as the remainder of the complaint.  The section 25110 claim is vague and conclusory.  The complaint fails to identify adequately the security transaction at issue.  If the section 25110 claim relies on plaintiffs' November 2006 and 2008 payments in return for interests in Chandi & Sons and Chandi Brothers, the claim is subject to limitations defenses.  Out of an abundance of caution, plaintiffs are granted an attempt to amend the section 25110 claim to allege facts to identify with precision securities transactions, their timing and purported wrongdoing which are subject to section 25110 liability and section 25503 remedies and facts to justify plaintiffs' delay to pursue section 25110 claims sooner to avoid limitations defenses.

### Failure To Issue Stock Certificate

The complaint's tenth claim seeks punitive damages in that plaintiffs never received their share certificates in Chandi & Sons and Chandi Brothers despite defendants' receipt of $1.35 million from plaintiffs.

1   California Corporations Code section 416 ("section 416") entitles shareholders "to have a
2   certificate signed in the name of the corporation . . . certifying the number of shares and the class or
3   series of shares owned by the shareholder."

4   Defendants fault the absence of a legal basis to award plaintiffs punitive damages, especially
5   given the absence of alleged damages resulting from absence of share certificates. Defendants further
6   fault the absence of a private right of action under section 416.

7   Plaintiffs respond that they never received their Chandi & Sons and Chandi Brothers stock
8   certificates although corporate minutes reflect that they were entitled to them.

9   The failure to issue stock certificates claim suffers the same maladies as the remainder of the
10  complaint. The claim is vague and conclusory. The complaint fails to identify adequately the securities
11  transactions at issue, including the precise timing of the transactions. If the failure to issue stock
12  certificate claim relies on plaintiffs' November 2006 and 2008 payments in return for interests in Chandi
13  & Sons and Chandi Brothers, the claim is subject to limitations defenses. Out of an abundance of
14  caution, plaintiffs are granted an attempt to amend the failure to issue stock certificates claim to allege
15  facts to identify with precision securities transactions, their timing and purported wrongdoing which are
16  subject to liability under section 416 and facts to justify plaintiffs' delay to pursue the failure to issue
17  stock certificate claims sooner to avoid limitations defenses.

18  **California Securities Fraud**

19  The complaint's eleventh claim alleges that Mr. Singh sold shares of Chandi & Sons and Chandi
20  Brothers "by means of untrue statements of material facts and omitted to state material facts and did
21  fraudulently obtain $1.35 Million from Plaintiffs." The California securities fraud claim quotes
22  California Corporations Code section 25401 ("section 25401"), which renders "unlawful for any person
23  to offer or sell a security in this state . . . by means of any written or oral communication which includes
24  an untrue statement of a material fact or omits to state a material fact necessary in order to make the
25  statements made, in the light of the circumstances under which they were made, not misleading." The
26  claim appears to further seek to impose joint and several liability on defendants under California
27  Corporations Code sections 25504 and 25504.1.

28  Defendants attack the California securities fraud claim's failure to identify actionable

19

misrepresentations or omissions, when and how the misrepresentations or omissions arose, and to whom was the subject of the misrepresentations or omissions.  Defendants challenge the Chandis' purported liability as officers in that minutes attached to the complaint reflect Mr. Singh as the sole officer of Chandi & Sons and Chandi Brothers.  Defendants appear to invoke the five-year limitations period of California Corporations Code section 25506(b) and argue that such limitations period expired given the alleged 2006 sale of Chandi & Sons and Chandi Brothers stock.

To support the California securities fraud claim, plaintiffs argue that:

1.     Mr. Singh claimed to own 100 percent of Chandi & Sons and Chandi Brothers;

2.     Mr. Singh claimed that Chandi & Sons and Chandi Brothers' assets were limited to a Ceres AM PM;

3.     Mr. Singh provided "doctored Articles of Incorporation" of Chandi & Sons to represent that Chandi & Sons was authorized to issue 1000 shares and in March 2013, plaintiffs discovered Chandi & Sons' "true Articles of Incorporation"; and

4.     The Chandis were "actively involved" in Chandi & Sons and Chandi Brothers "and took substantial distributions from the companies."

The California securities fraud claim suffers the same maladies as the remainder of the complaint.  The claim is vague and conclusory.  The complaint fails to identify adequately the securities transactions at issue, including precise timing of the transactions.  If the claim relies on plaintiffs' November 2006 and 2008 payments in return for interests in Chandi & Sons and Chandi Brothers, the claim is subject to limitations defenses.  Out of an abundance of caution, plaintiffs are granted an attempt to amend the California securities fraud claim to identify with precision securities transactions, their timing, and purported wrongdoing which are subject to liability under California Corporations Code sections 25401, 25504, and 25504.1 and facts to justify plaintiffs' delay to pursue California securities fraud claims sooner to avoid limitations defenses.

**California Securities Penalties**

The complaint's fourteenth claim is entitled "Right to Civil Penalty & Imprisonment" and cites to California Corporations Code sections 2201 ("section 2201") and 2207 ("section 2207") which subject a corporation and officers to monetary penalties regarding wrongs in issuing stock shares.  The

California securities penalties claim alleges that Mr. Singh and the Chandis were officers "charged with the duty to enter a transfer of shares upon the books" and "failed and refused to perform such duty to fraudulently obtain Plaintiffs' money." The claim further alleges that Chandi & Sons' and Chandi Brothers' tax returns reflect that Mr. Singh and the Chandis own 100 percent of the shares of Chandi & Sons and Chandi Brothers, not that Mr. Singh was the sole shareholder. The claim further alleges that since 2006, defendants made distributions to Mr. Singh and the Chandis "that actually belonged to Plaintiffs."

Defendants challenge plaintiffs' standing to pursue relief in the absence of a private right of action under the California Corporations Code sections cited in the California securities penalties claim, and in particular section 2207, which defendants identify as a criminal statute. Defendants characterize the California securities penalties claim as a "recitation of code provisions and a mix of general allegations about undated conduct." Defendants continue that a potential claim under section 2201 is barred by the one-year limitations period of California Code of Civil Procedure section 340(a) (an "action upon a statute for penalty or forfeiture").

Plaintiffs fail to address meaningfully defendants' arguments. Plaintiffs use their opposition papers to recite in conclusory fashion defendants' alleged wrongs and offer nothing more. Plaintiffs offer nothing credible to support a private right of action or the timeliness of the California securities penalties claim. Plaintiffs merely claim they "could not have discovered these multiple violations until they first suffered the initial breach by Defendants on or about February, 2013." Plaintiffs appear to base their purported delayed discovery on the fact that they continued to receive monthly payments until early 2013. The payments fail to address the corporate and securities issues which plaintiffs attempt to address in the California securities penalties claim. This Court construes the absence of plaintiffs' credible support for the claim as their concession that the claim fails. The California securities penalties claim is subject to dismissal with prejudice.

### Conspiracy

The complaint's (fifteenth) conspiracy claim alleges that plaintiffs "were harmed by Defendants' fraud, concealment, intentional and negligent misrepresentation, conversion, violations of securities, and that Defendants are responsible of the harm because they were part of a conspiracy to commit these

1    torts."

2         Defendants fault conspiracy as a stand alone claim in that "it is merely a mechanism for imposing

3    vicarious liability," not an independent tort.

4         Plaintiffs respond that defendants are responsible for plaintiffs' harm because they were part of

5    a conspiracy to commit torts.

6         "[C]ivil conspiracy is not an independent tort."  *Kidron v. Movie Acquisition Corp.*, 40

7    Cal.App.4th 1571, 1581, 47 Cal.Rptr.2d 752 (1995).  "Conspiracy is not a cause of action, but a legal

8    doctrine that imposes liability on persons who, although not actually committing a tort themselves, share

9    with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp.*

10   *v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475 (1994) (citing *Wyatt v. Union*

11   *Mortgage Co.,*24 Cal.3d 773, 784,157 Cal.Rptr. 392, 598 P.2d 45 (1979)).

12        "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated

13   by the commission of an actual tort." *Applied Equipment*, 7 Cal.4th at 511, 28 Cal.Rptr.2d 475.  "The

14   essence of the claim is that it is merely a mechanism for imposing vicarious liability; it is not itself a

15   substantive basis for liability." *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131

16   Cal.App.4th 802, 823, 32 Cal.Rptr.3d 325 (2005).

17        The conspiracy claim fails as an independent claim, and plaintiffs offer nothing credible to

18   support it.  The conspiracy claim is subject to dismissal with prejudice.

19                                      **RICO**[5]

20        The complaint's sixteenth RICO claim alleges that defendants "have been running a criminal

21   scheme and have defrauded Plaintiffs."  The RICO claim accuses defendants of mail fraud and/or wire

22   fraud based on "fraudulent conveyance of Plaintiff's assets to Defendants," "mailing of documents," and

23   "wire fraud by the transfer of funds thru the Federal Reserve Bank."   The RICO claim accuses

24   defendants of "bank fraud by intentionally misrepresenting their ownership of corporations with the

25   intent to defraud the bank and investors."  The RICO claim further accuses defendants of "extortion by

26   making repeated threats that Defendants will not return Plaintiffs' money" unless plaintiffs obtain

27

28        [5]        RICO refers to the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

1   dismissal of the Doans' lawsuit.

2       Defendants challenge the complaint's failure to plead RICO elements.

3       Subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

4       (c) It shall be unlawful for any person employed by or associated with any enterprise
        engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
5       or participate, directly or indirectly, in the conduct of such enterprise's affairs through a
        pattern of racketeering activity or collection of unlawful debt.

6

7                                      ***Elements***

8       A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of

9   racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim."

10  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).  A "plaintiff only has standing

11  if, and can only recover to the extent that, he has been injured in his business or property by the conduct

12  constituting the violation."  *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

13                                     ***Enterprise***

14      Section 1962(c) requires "that the person named as the defendant cannot also be the entity

15  identified as the enterprise."  *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir.

16  1989).  For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a

17  corporation or an "association in fact" of individuals.  18 U.S.C. § 1961(4).  The United States Supreme

18  Court has explained:

19      The enterprise is an entity, for present purposes a group of persons associated together
        for a common purpose of engaging in a course of conduct. The pattern of racketeering
20      activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C.
        § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing
21      organization, formal or informal, and by evidence that the various associates function as
        a continuing unit. The latter is proved by evidence of the requisite number of acts of
22      racketeering committed by the participants in the enterprise. While the proof used to
        establish these separate elements may in particular cases coalesce, proof of one does not
23      necessarily establish the other. The "enterprise" is not the "pattern of racketeering
        activity"; it is an entity separate and apart from the pattern of activity in which it engages.
24

25  *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

26      Moreover, "to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts,

27  not mere conclusory allegations, which establish the existence of an enterprise."  *Elliot v. Foufas*, 867

28  F.2d 877, 881 (5th Cir. 1989).

1    Defendants fault the complaint's failure to identify the requisite criminal enterprise in that the

2    complaint alleges "each of the Defendants was associated with the association-in-fact enterprise which

3    was engaged in and the activities of which affected intra and interstate commerce – the purpose of which

4    was to further the goals of the enterprise."  Defendants note that section 1962(c)'s prohibition of a

5    "person" associated with an "enterprise" to participate in the enterprise's affairs through a pattern of a

6    racketeering activity requires that the named defendant "cannot also be the entity identified as the

7    enterprise."  *See Atlas Pile Driving*, 886 F.2d at 995.  Moreover, "Congress did not intend to extend

8    RICO liability under § 1962(c) beyond those who participate in the operation or management of an

9    enterprise through a pattern of racketeering activity."  *Reves v. Ernst & Young*, 507 U.S. 170, 184, 113

10   S.Ct. 1163 (1993).

11   Plaintiffs respond that the "enterprise" defendants "have mounted might best be dubbed the

12   'Chandi Family RICO Enterprise.'  This criminal endeavor includes Defendant Nirmal Singh, his brother

13   and sister-in-law (Defendants Nachhattar and Susana Chandi), other named individuals who serve as

14   buffers and expeditors [sic] and an assortment of holding companies named as additional Defendants."

15   Plaintiffs offer nothing credible to support the requisite enterprise element.  Plaintiffs offer no

16   meaningful challenge to defendants' arguments that the complaint fails to allege a RICO enterprise.

17   Plaintiffs' hyperbole and regurgitation of the complaint fails to support the enterprise element.

18   ### Pattern Of Racketeering Activity

19   "Racketeering activity" is any act indictable under several provisions of Title 18 of the United

20   States Code.  *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. §

21   1961.  "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling,

22   arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or

23   listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under

24   State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).

25   Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to

26   require "at least two acts of racketeering activity, one of which occurred after the effective date of this

27   chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the

28   commission of a prior act of racketeering activity."  Section 1961"does not so much define a pattern of

24

1   racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J.,*

2   *Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989).  Section 1961(5) "says

3   of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering

4   activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years

5   (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It

6   thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J.,*

7   *Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

8        "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a

9   pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate

10  acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original).  A pattern is not

11  formed by "sporadic activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.  The term pattern requires

12  a relationship between predicates and the threat of continuing activity.  *H.J., Inc.*, 492 U.S. at 238, 109

13  S.Ct. at 2900.  The factor of continuity plus relationship combines to produce a pattern.  *H.J., Inc.*, 492

14  U.S. at 239, 109 S.Ct. at 2900.  "RICO's legislative history reveals Congress' intent that to prove a

15  pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are

16  related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at

17  239, 109 S.Ct. at 2900.

18       The complaint lacks sufficient facts to establish an enterprise's conduct of a pattern of

19  racketeering activities, especially given the absence of a factual basis for state or federal crimes to

20  constitute the necessary predicate acts within the definition of racketeering activity.  The complaint lacks

21  sufficient allegations that defendants or others engaged in an enterprise or two or more criminal acts to

22  support a pattern of racketeering activity under sections 1961(5) and 1962.  Plaintiffs' reliance on

23  unsupported mail and bank fraud is unavailing.

24                                           ***Damages***

25       The complaint further fails to satisfy the damages requirement for a RICO claim.  The "plain

26  language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for

27  a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or

28  investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d

429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

A purported RICO claim is vitiated by the absence of sufficient facts of an enterprise, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint alleges no injury to plaintiffs' business or property by a racketeering activity or sufficiently alleged violation identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962. The complaint lacks, and plaintiffs fail to offer, meaningful support for the civil RICO claim.

### *Pleading Specificity*

The RICO fail is further susceptible to challenge given the complaint's failure to satisfy F.R.Civ.P. 9(b) pleading requirements with the complaint's absence of facts to support RICO elements.

The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under section 1962. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.")

"The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). A RICO complaint must be presented with intelligibility sufficient "for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Old Time Enter., Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989). A RICO claim "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

"The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr*

1  *Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

2      As discussed above, the absence of facts to support RICO elements illustrates the complaint's

3  failure to satisfy F.R.Civ.P. 9(b) to further warrant dismissal of the RICO claim.  Plaintiffs offer nothing

4  to support a RICO claim, which is dismissed with prejudice.

5  **F.R.Civ.P. 12(f) Motion To Strike Standards**

6      Defendants further seek to strike portions of the complaint, pursuant to F.R.Civ.P. 12(f), which

7  empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous

8  matter."  Motions to strike may be granted if "it is clear that the matter to be stricken could have no

9  possible bearing on the subject matter of the litigation."  *LeDuc v. Kentucky Central Life Ins. Co.*, 814

10  F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D.

11  Cal. 1991).  "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time

12  and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."

13  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d

14  1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct.

15  1023 (1994).

16      An "immaterial" matter has no essential or important relationship to the claim for relief or

17  defenses pleaded.  *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120,

18  n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958).  An "impertinent" matter

19  is neither responsive nor relevant to the issues involved in the action and which could not be put in issue

20  or given in evidence between the parties.  *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5

21  F.R.D. 134 (D. Pa. 1946).  An "impertinent" matter consists of statements that do not pertain and are

22  unnecessary to the issues in question.  *Fantasy, Inc.*, 984 F.2d at 1527.

23      A "scandalous" matter improperly casts a derogatory light on someone, usually a party.

24  *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1221 (D. N.J. 1984); *Gilbert*, 56 F.R.D. at 120, n. 7; *Martin

25  v. Hunt*, 28 F.R.D. 35 (D. Mass. 1961).  Scandalous matters are allegations "that unnecessarily reflect[

26  ] on the moral character of an individual or state[ ] anything in repulsive language that detracts from the

27  dignity of the court" . . . and "include[ ] allegations that cast a cruelly derogatory light on a party or other

28  person."  *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1020 (N.D. Cal. 2009)

27

(citations omitted).  Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice.  *Talbot v. Robert Mathews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *see Beck v. Cantor, Fitzgerald & Co.*, 621 F.Supp. 1547, 1565 (N.D. Ill. 1985).

Matters may be stricken to reduce trial complication or if challenged allegations are so unrelated to plaintiff's claims to be unworthy of consideration as a defense and their presence in the pleading will prejudice the party seeking to strike matters.  *Fantasy, Inc.*, 984 F.2d at 1527.

### *Quoted Statutes*

Defendants seek to strike as immaterial from the complaint:

1.   Page 5, line 11 to page six, line 11, which recite California Penal Code sections 470(b) and (d) and 472 (forgery and counterfeiting);

2.   Page 7, lines 1-9, which recite Rule 10(b)(5) of the Securities and Exchange Act of 1934 (securities fraud);

3.   Page 9, lines 1-10, which recite California Penal Code sections 503 and 504 (embezzlement);

4.   Page 9, line 22 to page 10, line 1, which recite California Penal Code sections 518 and 522 (extortion); and

5.   Page 10, line 22 to page 13, line 8, which recite 18 U.S.C. § 1961 of RICO.

### *Alleged Wrongs*

Defendants further seek to strike from the complaint as scandalous the below alleged wrongs:

1.   Page six, line 12-28 alleging that Mr. Singh forged Chandi & Sons' articles of incorporation and delivered the forged articles to plaintiffs and Wells Fargo Bank;

2.   Page 7, line 15 to page 8, line 25 alleging that Mr. Singh committed mail fraud and bank fraud as to matters unrelated to plaintiffs' claims;

3.   Page 9, lines 12-20 alleging that Mr. Singh closed an AM PM owned by Chandi & Sons and Chandi Brothers and moved it to another station across the street owned by Valley Petroleum and that the Chandis took a Ceres AM PM worth more than $5 million from Chandi & Sons and Chandi Brothers without paying plaintiffs; and

28

4.      Page 10, lines 2-21 which allege that Mr. Singh offered to bribe Harpreet Dhaliwal $500,000, $750,000 and finally $1 million if Harpreet Dhaliwal could convince the Doans' attorney to drop litigation.

Plaintiffs offer nothing credible to oppose striking the above portions of the complaint. Plaintiffs merely assert that the "claims that gave rise to this lawsuit are far, far from spurious."

There is no reason for the complaint to recite lengthy statutes to warrant striking of the quoted statutes. The above alleged wrongs appear largely unconnected to plaintiffs. This Court agrees with defendants that the alleged wrongs are scandalous in the context of the poorly pled complaint. However, this Court is not in a position to strike the alleged wrongs entirely given plaintiffs' opportunity to file an amended complaint and this Court's below admonitions to plaintiffs.

## CONCLUSION AND ORDER

The complaint is in unacceptable form and fails to satisfy rudimentary pleading standards. Plaintiffs are given one, and only one, opportunity to amend the claims which are not dismissed with prejudice. For the reasons discussed above, this Court:

1.      DISMISSES with prejudice the (first) breach of contract claim against Mr. Singh only and otherwise DISMISSES the (first) breach of contract claim with leave to amend;

2.      DISMISSES with prejudice the (second) breach of contract claim;

3.      DISMISSES with prejudice the (third) money had and received claim;

4.      DISMISSES with leave to amend the (fourth) conversion claim;

5.      DISMISSES with leave to amend the (fifth through eighth) fraud claims;

6.      DISMISSES with leave to amend the (ninth) section 25110 claim;

7.      DISMISSES with leave to amend the (tenth) failure to issue stock certificates claim;

8.      DISMISSES with leave to amend the (eleventh) California securities fraud claim;

9.      DISMISSES with prejudice the (fourteenth) California securities penalties claim;

10.     DISMISSES with prejudice the (fifteenth) conspiracy claim;

11.     DISMISSES with prejudice the (sixteenth) RICO claim;

12.     STRIKES from the complaint:

        a.      Page 5, line 11 to page six, line 11, which recite California Penal Code sections

470(b) and (d) and 472 (forgery and counterfeiting);

    b.    Page 7, lines 1-9, which recite Rule 10(b)(5) of the Securities and Exchange Act of 1934 (securities fraud);

    c.    Page 9, lines 1-10, which recite California Penal Code sections 503 and 504 (embezzlement);

    d.    Page 9, line 22 to page 10, line 1, which recite California Penal Code sections 518 and 522 (extortion); and

    e.    Page 10, line 22 to page 13, line 8, which recite 18 U.S.C. § 1961 of RICO;

13.    ORDERS plaintiffs, no later than July 1, 2013, to file and serve either: (a) papers to dismiss this action; or (b) an amended complaint which amends only the (first) breach of contract claim (as to only Chandi & Sons and Chandi Brothers), the (fourth) conversion, (sixth through eighth) fraud, (ninth) section 25110 claim, (tenth) failure to issue stock certificates, and (eleventh) California securities fraud claims.  Without this Court's order, plaintiffs are prohibited to allege claims dismissed with prejudice and to add claims not alleged in the complaint.  If plaintiffs elect to amend the claims dismissed with leave to amend, plaintiffs are admonished to pursue only such claims based on sufficient supporting facts and law, that plaintiffs' counsel is subject to liability under 28 U.S.C. § 1927, F.R.Civ.P. 11, and other authorities, that this Court will grant plaintiffs no further attempt to plead claims, and that disobedience of this order is grounds to dismiss an amended complaint; and

14.    ORDERS defendants, no later than July 24, 2013, to file and serve a response to plaintiffs' amended complaint, if filed.

IT IS SO ORDERED.

Dated:   __June 11, 2013__       __/s/  Lawrence J. O'Neill__
                                       UNITED STATES DISTRICT JUDGE