UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGJEEVAN K. DHALIWAL, et al., | CASE NO. CV F 13-0484 LJO SKO |
| Plaintiffs, | **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTIONS** (Docs. 16,18.) |
| vs. | |
| NIRMAL SINGH, et al., | |
| Defendants. | |
| _____/ | |

## **PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters.  This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff.  The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.  The parties are required to consider, and

if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.  A Magistrate Judge consent form is available on this Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.  Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.  Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by one of this Court's U.S. Magistrate Judge.

## INTRODUCTION

All defendants[1] seek to dismiss as inadequately pled and barred by limitations defenses and prior order plaintiffs Jagjeevan K. Dhaliwal ("Ms. Dhaliwal") and Mohinder S. Gill's ("Mr. Gill's") claims arising out of investment in Stanislaus County gas stations/convenience stores.  Ms. Dhaliwal and Mr. Gill (collectively "plaintiffs") respond that their claims are timely and adequately pled to accuse defendants of wrongdoing.  This Court considered defendants' F.R.Civ.P. 12(b)(6) motions to dismiss on the record without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES plaintiffs' claims, except for breach of contract against Chandi & Sons and involuntary dissolution against Chandi & Sons and Chandi Brothers.

---

[1]    Defendants are Nirmal Singh ("Mr. Singh"), Nachhattar Singh Chandi ("Mr. Chandi"), Susana Chandi ("Ms. Chandi"), KS Chandi & Sons, Inc. ("Chandi & Sons"), Chandi Brothers, LLC ("Chandi Brothers"), and Valley Petroleum, Inc. ("Valley Petroleum") and will be referred to collectively as "defendants."

# BACKGROUND[2]

## Summary

Mr. Singh is an ARCO AM PM ("AM PM") franchisee and developer who sought investors with him and his brother and sister-in-law Mr. Chandi and Ms. Chandi[3] to purchase and develop AM PM gas station/convenience stores.  The Chandis reside in Riverside County and with Mr. Singh own more than 10 California AM PM's.  Chandi & Sons, Chandi Brothers and Valley Petroleum are California corporations principally located in Turlock, California.  At relevant times, Mr. Singh was the chief financial officer ("CFO") and shareholder of Chandi & Sons and Chandi Brothers, and the Chandis were President and Secretary of Chandi & Sons and Chandi Brothers.  Plaintiffs are husband and wife and Canadian physicians who claim to have invested in AM PM's at issue in this action.  The complaint alleges common law and statutory claims that defendants bilked plaintiffs out of $1.35 million to invest in AM PM's.

## Plaintiffs' Inducement To Invest

In September 2006, Mr. Singh induced plaintiffs to part with $1.35 million to acquire 50 percent ownership interests in each of Chandi & Sons and Chandi Brothers and "to purchase gas stations."  Mr. Singh assured plaintiffs that each station would make $30,000 per month after six months operation.  Mr. Singh prepared forged articles of incorporation of Chandi & Sons which reflected that Chandi & Sons was authorized to issue 1,000 shares although the bona fide articles of incorporation reflect that Chandi & Sons was authorized to issue 2000 shares.

On September 5, 2006, "Plaintiffs gave $1.35 million to Defendants."  November 22, 2006 board of directors minutes reflect that each plaintiff owned 25 percent of each of Chandi

---

[2]      The factual recitation summarizes generally, and to the best of this Court's ability, plaintiffs' operative First Amended Complaint ("FAC") and other matters which this Court may consider.  Despite the admonitions of this Court's June 12, 2013 order ("June 12 order"), the FAC fails to allege facts clearly to frustrate federal pleading requirements and purposes.

[3]      Mr. and Ms. Chandi will be referred to collectively as the "Chandis."

3

& Sons' and Chandi Brothers' shares and that Mr. Singh owned the remaining 50 percent shares of each of Chandi & Sons and Chandi Brothers.  Plaintiffs believe that $850,000 of their money was used to purchase a Hatch Road AM PM ("Hatch AM PM") in Ceres, California and that their remaining $500,000 was devoted to a Mitchell Road AM PM (Mitchell AM PM) in Ceres.  Mr. Singh stated that he would sell the Hatch AM PM for a $1 million profit prior to July 2007 and give 50 percent of the sale profit to plaintiffs.  Mr. Singh executed a September 27, 2006 trust deed for Chandi Brothers "in consideration of" a $850,000 "indebtedness." Plaintiffs claim that the trust deed was to be recorded against a Glenwood Road AM PM ("Glenwood AM PM") in Turlock, California and that they had acquired collectively 50 percent of the shares of each of Chandi & Sons and Chandi Brothers.

### Plaintiffs' Certificate Of Investment

In January 2007, Mr. Singh claimed that the AM PMs were doing well and paid plaintiffs $25,000 as well as "payments of $4,600 per month as share payments" in Chandi & Sons and Chandi Brothers.

In July 2007, after a sale of the Hatch AM PM did not close, Mr. Singh stated he would buy plaintiffs' shares of the Hatch AM PM for $200,000, rather than $500,000 originally promised, when he closed the sale and would pay plaintiffs back with a refinanced loan.  Mr. Singh signed a July 20, 2007 Certificate of Investment ("COI") as CFO for Chandi & Sons and Chandi Brothers and to certify plaintiffs' $1,340,000 investment on November 22, 2006 with Chandi & Sons and Chandi Brothers for 18 months in apparently the Hatch Road AM PM and secured up to $850,000 by a deed of trust apparently on a Lander Avenue AM PM ("Lander AM PM") in Turlock.  The COI commits Chandi & Sons and Chandi Brothers to pay eight percent interest each month and "a fixed profit of $200,000."  Mr. Singh told plaintiffs that they would continue to own their Chandi & Sons and Chandi Brothers shares until plaintiffs were repaid.

In December 2007, Mr. Singh stated that the U.S. economy was "very bad" and that banks were not making loans to require another year for him to secure a loan.  Mr. Singh continued to make timely $8,933 monthly interest payments on plaintiffs' $1.35 million

investment but stopped making $4,600 monthly distributions on shares "stating that due to the bad economy the station . . . was actually losing money."

### Chandi & Sons' Promissory Note

In July 2008, Mr. Singh was unable to refinance the Hatch AM PM and to pay plaintiffs $200,000.  Mr. Singh told plaintiffs that the Hatch AM PM was not doing well and asked for an extension.  Mr. Singh as Chandi & Sons' owner executed a July 15, 2008 Promissory Note with Balloon Payment ("promissory note") to pay plaintiffs $1,350,000 "payable in monthly interest installments of $8933.00 calculated at an interest of 8% per annum, concluding with one Balloon Payment of the principal amount plus any interest and/or penalties outstanding." The promissory note states it "is secured by a Deed of Trust of Even Date herewith."  Plaintiffs identify the Hatch AM PM as the secured property for the promissory note and characterize the promissory note to supersede the COI, which was rendered invalid.  The promissory note does not indicate the date for a balloon payment.

Mr. Singh represented to plaintiffs that the promissory note was better security because it waived limitations defenses.  The promissory note states that "[e]ach maker . . . waives presentment, demand and protest and **the right to assert any statute of limitations**."  (Bold added.)

When plaintiffs asked Mr. Singh about distribution on shares, Mr. Singh presented that "the station was just breaking," there was no income, and he could not pay out any distribution on the shares.

In September 2009, Mr. Singh told plaintiffs that a bank had agreed to refinance his AM PMs and that he would be able to pay their note in about three months.

### India Home Sale Proceeds

In November 2009, Mr. Singh borrowed $177,500 from the sale of plaintiffs' home in India to improve the Glenwood AM PM.  Mr. Singh represented that, using the FAC's words, "for two years he would make no interest payment and would return the money in full, but if he did not return the money in full by the end of one year, he would pay 8% interest on it." Plaintiffs' opposition papers indicate that Mr. Singh represented he would pay eight percent

interest "if he did not return the money in full by the end of one year."

## Plaintiffs' Request For Return Of Funds

In January 2010, plaintiffs inquired of Mr. Singh about refinancing.   Mr. Singh represented that "the bank had refused to refinance the stations."  Having grown tired of Mr. Singh's excuses for inability to refinance, plaintiffs "asked for their funds back."   Mr. Singh responded that plaintiffs had two choices:

1.      Purchase the Hatch AM PM for $4.6 million, which would require plaintiffs to obtain an unavailable loan, operate the Hatch AM PM without Mr. Singh, and face the likelihood of losing their investment; or

2.      Allow Mr. Singh to continue to operate the Hatch AM PM for another year as the U.S. economy improved and he could pay plaintiffs back.

Mr. Singh told plaintiffs that:

1.      Pursuant to the promissory note, plaintiffs had consented to an automatic renewal and waived right to presentments;

2.      Plaintiffs were compelled to wait for Mr. Singh to refinance the Hatch AM PM;

3.      Plaintiffs should feel safe because the promissory note waived limitations defenses; and

4.      Mr. Singh would stop making payments if plaintiffs filed a lawsuit and would drag out the case during which plaintiffs would receive no income.

Having no choice, plaintiffs, apparently in January 2010, extended the promissory note.

## Continuing Payments To Plaintiffs

From apparently January 2010, Mr. Singh continued to make $8,933 monthly payments representing eight percent interest on $1.35 million.  In January 2011, plaintiffs asked for the promissory note's balloon payment and threatened litigation if it was not paid.  Mr. Singh stated that the AM PMs had improved and that he would start to pay on plaintiffs' shares and the promissory note's principal.

Beginning in March 2011, Mr. Singh made $15,000 monthly payments comprising $8,933 interest on the promissory note and $6,067 distributions on shares of Chandi & Sons

6

and Chandi Brothers.  In May 2011, Mr. Singh increased the monthly payments to $15,800 with the additional $800 toward principal of the promissory note.  In May 2011, Mr. Singh represented that he would pay off the promissory note within 18 months as he would obtain refinancing from Wells Fargo Bank within a year.

In December 2011, Mr. Singh wired $40,000 to plaintiffs toward the promissory note's principal.

### Wells Fargo Refinancing

In March 2012, Mr. Singh represented to plaintiffs that he was seeking Wells Fargo Bank refinancing for the Hatch AM PM and that he would obtain a line of credit to make a $600,000 lump sum payment to plaintiffs.  In June 2012, Mr. Singh misrepresented that Wells Fargo Bank refused to refinance in that Wells Fargo Bank had provided May 9, 2012 refinancing of $7.3 million for AM PMs, including the Hatch AM PM, and provided a $600,000 line of credit that Mr. Singh did not use to pay plaintiffs but rather used to purchase a Modesto property.

### Termination Of Payments To Plaintiffs

In October 2012, Mr. Singh increased plaintiffs' monthly payments to $16,000, with allocations of $8,933 for interest on the promissory note, $6,067 for distribution on shares, and $1,000 for principal on the promissory note.

In December 2012, after Kevin and Pauline Doan and Harpreet Dhaliwal (collectively the "Doan plaintiffs") filed litigation against Mr. Singh, Chandi & Sons and Chandi Brothers, Mr. Singh stopped plaintiffs' payments.  In January 2013, Mr. Singh told plaintiffs that:

1.      Mr. Singh would make no further payments unless plaintiffs compelled the Doan plaintiffs to dismiss their litigation and settle with Mr. Singh on his terms;

2.      Mr. Singh would pay plaintiffs $25,000 monthly for two years and then make a balloon balance payment if the Doan plaintiffs dismissed their litigation; and

3.      Plaintiffs needed to revoke the promissory note.

Plaintiffs responded they would not intimidate the Doan plaintiffs to dismiss their litigation and that plaintiffs considered to contact the Doan plaintiffs' attorney.  Mr. Singh

stated he would drag out litigation, use plaintiffs' money to fight them, and cause plaintiffs "to spend a lot of money." Mr. Singh further stated that if plaintiffs succeeded in litigation after three years, Mr. Singh would file for bankruptcy and never return plaintiffs' money to compel plaintiffs to force the Doan plaintiffs to drop their litigation.

The FAC identifies November 2012 as plaintiffs' last payment. In January 2013, plaintiffs told Mr. Singh that he had 45 days to resume payments prior to plaintiffs initiating litigation. Plaintiffs sent Mr. Singh an email that they would call the promissory note due if Mr. Singh did not resume payments. On February 14, 2013, plaintiffs sent defendants a notice of default and demand for full payment of the promissory note.

## Plaintiffs' Claims

On April 3, 2013, plaintiffs filed their original complaint to allege breach of contract, fraud, conversion, securities and related claims. The June 12 order dismissed most of the original complaint's claims and several of such claims with prejudice. The June 12 order admonished plaintiffs to file an amended complaint to amend only limited claims dismissed without prejudice. The June 12 order further admonished:

> Without this Court's order, plaintiffs **are prohibited** to allege claims dismissed with prejudice and **to add claims not alleged in the complaint**. If plaintiffs elect to amend the claims dismissed with leave to amend, plaintiffs are admonished to pursue only such claims based on sufficient supporting facts and law, that plaintiffs' counsel is subject to liability under 28 U.S.C. § 1927, F.R.Civ.P. 11, and other authorities, that this Court will grant plaintiffs no further attempt to plead claims, and that disobedience of this order is grounds to dismiss an amended complaint[.] (Bold added.)

In response to the June 12 order, plaintiffs filed their FAC to allege breach of contract, fraud and securities claims and to add claims which this Court has not authorized. The FAC's claims will be discussed below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion to Dismiss Standards

Defendants challenge the FAC's claims as barred legally and by the June 12 order.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

8

*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense."  *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.  *Jablon v. Dean Witter &*

10

*Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

Lastly, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).  A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).[5]

With these standards in mind, this Court turns to defendants' challenges to the FAC's claims.

### Breach Of Contract

#### Mr. Singh

The title of the FAC's (first) breach of contract claim indicates it is "Against Defendants Singh, KS Chandi & Sons, Inc. and Chandi Brothers, LLC only."  The claim appears to

---

[4]       "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

[5]       Plaintiffs' opposition papers include unauthenticated exhibits lacking foundation.  This Court disapproves of plaintiffs' reliance on such documents which are not subject to consideration on a F.R.Civ.P. 12(b)(6) motion to dismiss.  As such, this Court need not more specifically address defendants' objections to the opposition exhibits.

proceed on the promissory note in that it alleges:  "In December 2012, Defendant KS Chandi Sons breached the terms of the Promissory Note and failed to make the monthly payments."

The June 12 order dismissed with prejudice breach of contract claims against Mr. Singh, especially given the absence of a writing to which he was a party.  Despite the breach of contract claim's title, plaintiffs claim Mr. Singh "is not a defendant in the first claim."  This Court construes the claim's title to include erroneously Mr. Singh.  Nonetheless, to clarify, Mr. Singh is not subject to a breach of contract claim.

### Chandi Brothers

Defendants contend that Chandi Brothers is not liable for breach of contract in that the promissory note is the only document to support a breach of contract and is signed only by Chandi & Sons.  Plaintiffs offer nothing to oppose Chandi Brothers dismissal from the breach of contract claim.  As such, like Mr. Singh, Chandi Brothers is not subject to breach of contract liability.

### Breach Of Fiduciary Duty

In disobedience of the June 12 order, the FAC adds an unauthorized (second) breach of fiduciary duty claim against "all defendants" and which apparently is based on breach of a Chandi Brothers "Operating Agreement" for failure "to issue writings which reflect the ownership interest" and "to permit inspection" and engaging in fraud.

### June 12 Order's Bar To Add Claims

Plaintiffs' original complaint lacked a breach of fiduciary duty claim.  The June 12 order barred addition of new claims, such as the breach of fiduciary duty claim, without this Court's order.  Plaintiffs' unexplained disobedience of the June 12 order warrants dismissal of the breach of fiduciary duty claim.

### Insufficient Pleading

Defendants challenge the breach of fiduciary duty claim as insufficiently pled.

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage.  *Pellegrini v. Weiss*, 165 Cal.App.4th 515, 524, 81 Cal.Rptr.3d 387 (2008).

A fiduciary relationship arises "between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937).   A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent."   *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

 Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26 Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)). To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. Of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted).

The FAC lacks sufficient facts to support a fiduciary relationship among plaintiffs and defendants.   The FAC alleges ambiguous financial arrangements which culminated in the promissory note.   The FAC's distilled facts and inferences are that plaintiffs provided funds to Mr. Singh to invest in AM PMs.   Such facts and inferences reveal a commercial contractual relationship, not one of trust and repose.   Plaintiffs offer nothing meaningful to identify details of an actionable fiduciary relationship.

In addition to an absence of facts to support a fiduciary relationship, the FAC lacks sufficient facts to support breach of a fiduciary duty.   The FAC appears to rely on a Chandi Brothers operating agreement.   However, such operating agreement is unapparent from the

record as is whether plaintiffs are parties to it to give rise to purported breaches.

### *Limitations Defense*

Defendants further challenge the breach of fiduciary duty claim as barred under the four-year limitations periods of California Code of Civil Procedure sections 343 (relief not otherwise provided for) and 338(d) (fraud).  Since the original complaint was filed on April 3, 2013, an alleged breach of fiduciary duty would need to have arisen since April 3, 2009, three years prior to filing this action.  The FAC alleges that plaintiffs paid their $1.35 million in September 2006 and that the transactions culminated with the July 15, 2008 promissory note. The FAC's facts and inferences are that the promissory note satisfied plaintiffs, despite the absence of receipt of Chandi & Sons' and Chandi Brothers' shares.  Neither the FAC nor record reveals when the Chandi Brothers operating agreement was effective or secured plaintiffs rights and benefits.  In sum, a purported breach of fiduciary duty claim is susceptible to limitations defenses to warrant further the claim's dismissal.

### **Fraud**

### *Allegations*

As to fraud, the FAC alleges (third) fraud-intentional and (fourth) negligent misrepresentation claims against Mr. Singh and a (fifth) false promise claim against Mr. Singh, Chandi & Sons and Chandi Brothers.  These fraud claims identify the following "false representations":

1.      On November 22, 2006, Mr. Singh represented that Chandi & Sons' and Chandi Brothers shares each totaled 1,000 and that Mr. Singh owned 100 percent of the shares and could sell 50 percent of them;

2.      Mr. Singh provided forged articles of incorporation in that Chandi & Sons' bonafide articles of incorporation authorized 2,000 shares;

3.      On November 22, 2006, Mr. Singh represented to plaintiffs that for their $1.35 million investment, plaintiffs would receive 50 percent or 500 shares of each of Chandi & Sons and Chandi Brothers;

4.      On July 20, 2007, Mr. Singh represented that plaintiffs' money "would be

protected" by a deed of trust on the Lander AM PM;

5.     On July 20, 2007, Mr. Singh represented that Chandi & Sons and Chandi Brothers would return plaintiffs' $1.35 million plus interest, penalties and a fixed $200,000 profit;

6.     On July 15, 2008, Mr. Singh for Chandi & Sons induced plaintiffs not to pursue litigation and signed the promissory note to make eight percent interest payments of $8,933 monthly with a $1.35 balloon payment; and

7.     In November 2009, Mr. Singh represented that for plaintiffs' $177,500 investment in the Glenwood AM PM, Mr. Singh would return the $177,500 interest free and give plaintiffs 50 percent equity and shares in the Glenwood AM PM.

The fraud claims identify the following "concealments" as to Chandi & Sons and Chandi Brothers:

1.     Mr. Singh and the Chandis for Chandi Brothers executed a $1,890,400 promissory note, dated October 26, 2006 and payable to Altura Credit Union for the Mitchell AM PM;

2.     Mr. Singh and the Chandis for Chandi & Sons executed a $589,600 promissory note, dated October 30, 2006 and payable to Altura Credit Union for the Mitchel AM PM;

3.     Mr. Singh and the Chandis for Chandi Brothers executed a $1,749,600 promissory note, dated November 6, 2006 and payable to Altura Credit Union for the Hatch AM PM and failed to disclose to Altura Credit Union that plaintiffs' money was used to purchase the land of the Hatch AM PM;

4.     Mr. Singh and the Chandis for Chandi & Sons executed a $890,400 promissory note, dated November 14, 2006 and payable to Altura Credit Union for the Lander AM PM;

5.     On August 12, 2008, Mr. Singh and the Chandis executed a deed of trust to secure against the Glenwood AM PM a $1 million debt to Altura Credit Union and failed to disclose to the Altura Credit Union that plaintiffs' money had been used to improve the Glenwood AM PM and that plaintiffs owned 50 percent of the station;

6.     In August 2010, when obtaining a $993,482 loan from Altura Credit Union, Mr.

Singh and the Chandis failed to inform Altura Credit Union of plaintiffs' senior $850,000 lien interest;

7.     Mr. Singh and the Chandis failed to disclose to Altura Credit Union that plaintiffs' money was used to purchase the land for the Mitchell AM PM and that plaintiffs own 50 percent each of Chandi & Sons and Chandi Brothers;

8.     Mr. Singh and the Chandis failed to disclose plaintiffs' interests in Chandi & Sons and Chandi Brothers in Internal Revenue Service filings;

9.     Mr. Singh failed to disclose plaintiffs' 50 percent interests and senior liens in Chandi & Sons and Chandi Brothers to the Doan plaintiffs when Mr. Singh induced the Doan plaintiffs to invest in November 2011;

10.     In early 2012, Mr. Singh obtained a $7.3 million loan from Wells Fargo Bank without disclosing plaintiffs' senior $850,000 lien interest and 50 percent ownership interests in each of Chandi & Sons and Chandi Brothers; and

11.     By a grant deed recorded on December 20, 2012, Chandi Brothers transferred the Lander AM PM to Turlock Petroleum.

The FAC's (seventh) concealment claim[6] proceeds against all defendants and alleges that in January 2013 when Mr. Singh told plaintiffs of the Doan plaintiffs' litigation and stopped making payments to plaintiffs, plaintiffs discovered that:

1.     Defendants had sold Chandi & Sons' and Chandi Brothers' assets without informing plaintiffs;

2.     Mr. Singh had misrepresented to the Doan plaintiffs that he owned 100 percent of the shares of Chandi & Sons and Chandi Brothers and sold 50 percent of the shares to the Doan plaintiffs and misrepresented to Wells Fargo that Mr. Singh owned 100 percent of shares;

3.     Defendants did not intend to give plaintiffs security for their paid monies and that Mr. Singh had never recorded deeds of trust in plaintiffs' favor;

4.     Mr. Singh and the Chandis shut down the Glenwood AM PM, of which

---

[6]     The FAC misidentifies the concealment claim as the seventh claim.  Based on the FAC's preceding claims, the concealment claim should be the FAC's sixth claim.

plaintiffs owned 50 percent, and moved the franchise across the street to the Lander AM PM;

5.     Mr. Singh sold the Mitchell AM PM to the Chandis;

6.     The Chandis continued to operate the Mitchell AM PM after claiming they had resigned as officers of Chandi & Sons and Chandi Brothers; and

7.     On December 20, 2011, Mr. Chandi signed a quit claim deed to transfer the Mitchell AM PM from Chandi Brothers to Mitchell Corner, LLC, which Mr. Chandi solely owned.

### *Limitations Defense And Delayed Discovery*

Defendants challenge the fraud claims as barred by California's the three-year limitations period for fraud and fault the FAC's allegations of delayed discovery to revive the fraud claims.   Plaintiffs contend that the FAC adequately alleges delayed discovery of defendants' wrongdoing to preserve the fraud claims.

California Code of Civil Procedure section 338(d) ("section 338(d)") provides that a fraud claim "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

Under the discovery rule, "the limitations period does not accrue until the aggrieved party has notice of the facts constituting the injury." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th 1308, 1318, 64 Cal.Rptr.3d 9 (2007).   "The 'discovery rule' . . . assumes that the elements of accrual including harm exist, but tolls the ru[nn]ing of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause)." *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).   The discovery rule "is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." *Saliter v. Pierce Brothers Mortuaries,* 81 Cal.App.3d 292, 297, 146 Cal.Rptr. 271 (1978).

To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically

plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)).

To satisfy the time and manner of discovery requirement, a plaintiff must allege "facts showing the time and surrounding circumstances of the discovery of the cause of action upon which they rely." *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563, 305 P.2d 20 (1956). "The purpose of this requirement is to afford the court a means of determining whether or not the discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know before." *Bennett*, 47 Cal.2d at 563, 305 P.2d 20.

Moreover, "to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661. The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff  must show that it was not at fault for failing to discover or had neither actual nor presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The FAC lacks facts to support delayed discovery for the fraud claims. The FAC's facts and inferences are that:

1.      In 2006, plaintiffs paid $1.35 million in 2006 thinking that they were obtaining 50 percent ownership in Chandi & Sons and Chandi Brothers;

2.       In July 2007, Mr. Singh for Chandi & Sons and Chandi Brothers provided plaintiffs the COI to note that plaintiffs' monies had been invested in Chandi & Sons and

Chandi Brothers;

      3.     In July 2008, the terms of plaintiffs' investment culminated in the promissory note, providing for $8,933 monthly interest payment but no due date for the balloon payment; and

      4.     Despite Mr. Singh's explanations and threats, plaintiffs accepted defendants' varying payments up to January 2013.

The FAC does not allege that plaintiffs inquired into or demanded their purported stock certificates or other evidences of ownership in Chandi & Sons and Chandi Brothers. The FAC lacks sufficient facts that plaintiffs were unable to discover alleged fraud despite reasonable diligence. There are no facts of plaintiffs' reasonable diligence in that the FAC's inferences are that plaintiffs had accepted the arrangement culminating in the promissory note and payments up to January 2013. The FAC no less than suggests that as of the July 15, 2008 promissory note, plaintiffs knew or with reasonable diligence should have known that they were not owners of Chandi & Sons and Chandi Brothers and that defendants used plaintiffs' monies in return for interest and other payments. "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal.4th at 807–808, 27 Cal.Rptr.3d 661.

The FAC alleges that as of January 2010, plaintiffs were aware of Mr. Singh's alleged refinancing difficulties and "asked for their funds back." The FAC's facts and inferences are that despite Mr. Singh's threats to stop payments, plaintiffs accepted their arrangement with him and allowed him to operate. No later than January 2010, plaintiffs were aware of facts of infringement on their rights but knowingly chose not to act. When "a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge." *Victor Oil Co. v. Drum*, 184 Cal. 226, 240, 193 P. 243 (1920.)

Plaintiffs' reliance on the Doan plaintiffs' litigation is misplaced and disconnected to their fraud allegations. Although the Doan plaintiffs' litigation may have confirmed that

plaintiffs were not owners of Chandi & Sons and Chandi Brothers, alleged facts learned from the Doan plaintiffs' litigation do not demonstrate that plaintiffs were prevented to learn of defendants' alleged fraud. Allegations of as to the Doan plaintiffs' litigation merely references when plaintiffs decided to take action, at a time when payments to them stopped. Moreover, the FAC fails to connect how Doan litigation facts relate to plaintiffs' fraud claims. Despite similarity of plaintiffs' and the Doan plaintiffs' complaints against defendants, they entered into separate arrangements not including each other.

In sum, nearly all of the alleged fraud arose no less than four years prior to plaintiffs' filing this action. Neither the FAC nor the record demonstrates plaintiffs' reasonable diligence to no less than inquire into what they claim is fraud. The FAC reveals the opposite of plaintiff's diligence and reasonable care and that they had accepted their arrangement with defendants until the payments stopped.

### *Fraudulent Concealment*

Plaintiffs appear to base the (seventh) fraudulent concealment claim on defendants' failure "to disclose vital facts," including the Chandis' roles in and sales of assets of Chandi & Sons and Chandi Brothers. Putting aside the limitations defense, defendants fault the absence of facts to support a fraudulent concealment claim.

Because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

A claim for fraudulent concealment requires that:

1.    The "defendant must have concealed or suppressed a material fact;"

2.    The "defendant must have been under a duty to disclose the fact to the plaintiff;"

3.    The "defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;"

4.    The "plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;" and

20

5.      As a result of the concealment or suppression of the fact, "the plaintiff must have sustained damage."

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1163 (9th Cir. 2012) (quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 7 Cal.Rptr.2d 859, 864 (1992)).

The FAC lacks facts to support the fraudulent concealment claim which appears to generalize plaintiffs' fraud allegations and to attempt to address delayed discovery.  Because of the FAC's ambiguity, the FAC reveals no defined duty owed to plaintiffs, especially since plaintiffs' arrangement with defendants culminated in the vague promissory note.  There are no facts to demonstrate how plaintiffs would have acted differently had they known of concealed facts, especially given their years of acquiescence in their arrangement.  The FAC's facts and inferences are that plaintiffs were content with their arrangement during the time that they received payments.  To the extent the fraudulent concealment claim seeks to enhance delayed discovery, it fails, as discussed above.

**Federal Securities Fraud**

The FAC purports to allege three (seventh through ninth) federal securities claims based on apparent failure to register securities and fraudulent sales.  The June 12 order dismissed with leave to amend the original complaint's California securities fraud claims and barred addition of new claims without this Court's order.  Plaintiffs fail to explain how the federal securities claims are the same as the original complaint's California securities fraud claims to warrant the federal securities claims' inclusion in the FAC.  This Court construes plaintiffs' failure to justify the federal securities claims as the same as the California securities fraud claims as disobedience of the June 12 order to warrant dismissal of the federal securities claims.

*Insufficient Pleading*

The FAC lacks particularized facts to support federal securities fraud.  There are no facts that the purported securities, apparently shares in Chandi & Sons and Chandi Brothers, are subject to the federal securities laws cited in the FAC.  At most, the FAC reflects that Chandi & Sons and Chandi Brothers are closely held and whose shares are not traded publicly

to invoke federal regulation relied upon by plaintiffs. There are no particularized allegations that the alleged securities were in connection with a national securities exchange to require their registration. *See* 15 U.S.C. § 78l. The federal securities fraud claims also appear to rely on insider trading prohibitions which are not at issue under the FAC's facts. *See* 15 U.S.C. § 78t-1.

Moreover, federal securities claims must satisfy F.R.Civ.P. 9(b) particularity requirements. *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). The basic elements of a Rule 10b-5 claim are: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Daou Systems*, 411 F.3d at 1014.

A securities fraud complaint must "plead with particularity both falsity and scienter." *See Daou Systems*, 411 F.3d at 1104. Such complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th 2002) (quoting 15 U.S.C. § 78u-4(b)(1)).

The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Gompper*, 298 F.3d at 895 (quoting 15 U.S.C. § 78u-4(b)(2)); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir.1999) (facts must come closer to demonstrating intent as opposed to mere motive and opportunity). The stricter standard for pleading scienter naturally results in a stricter standard for pleading falsity, because "'falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' and the two requirements may be combined into a unitary inquiry . . ." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir.2002) (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

A federal securities fraud claim requires an untrue statement or omission of material fact "in connection with the purchase or sale of any security." *Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978 (1988). To satisfy the "in connection with the purchase or sale of any

security" requirement, "the misrepresentation or omission must pertain to the securities themselves; allegations of fraud merely involving securities are not sufficient." *Bissell v. Merrill Lynch & Co., Inc.*, 937 F.Supp. 237, 242 (S.D.N.Y. 1996). "[U]nless the alleged fraud concerns the value of the securities bought or sold, or the consideration received in return, such fraud is not 'in connection with' the purchase or sale of a security." *Bissell*, 937 F.Supp. at 242.

The FAC alleges no more than purported fraud merely involving securities and fails to establish necessary elements with particularized facts. There are no allegations as to the value of the purported securities. The FAC's facts and inferences are that plaintiffs' financial arrangement culminated in the promissory note, not a securities transaction. Although plaintiffs may have contemplated receipt of shares in Chandi & Sons and Chandi Brothers, the FAC's facts and inferences are that plaintiffs' arrangement morphed into something else and facts giving rise to a purported securities claim passed nearly seven years ago. Plaintiffs' attempt to create a securities transaction by submitting dozens of exhibits merely burdens the record and this Court with no apparent supporting rationale. The federal securities claims fail.

### **Inspection Of Books And Records**

The FAC's eleventh claim proceeds against all defendants and appears to seek inspection of "the accounting books and records and minutes" of Chandi & Sons.

California Corporations Code section 1601(a) entitles shareholders to inspect corporate records:

> The accounting books and records and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation, and of any foreign corporation keeping any such records in this state or having its principal executive office in this state, shall be open to inspection upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to such holder's interests as a shareholder or as the holder of such voting trust certificate.

The FAC's twelfth claim proceeds against all defendants and appears to seek inspection of "the accounting books and records and minutes" of Chandi Brothers.

California Corporations Code section 17106(a) entitles members of limited liability

corporations to inspect records:

> Upon the request of a member or a holder of an economic interest, for purposes reasonably related to the interest of that person as a member or a holder of an economic interest, a manager shall promptly deliver, in writing, to the member or holder of an economic interest, at the expense of the limited liability company, a copy of the information required to be maintained by paragraphs (1), (2), and (4) of subdivision (a) of Section 17058, and any written operating agreement of the limited liability company.

Defendants contend that plaintiffs are not entitled to inspect Chandi & Sons' records in that the FAC reveals that plaintiffs' arrangement culminated in the promissory note to render plaintiffs creditors, not shareholders or members.  Defendants further contend that plaintiffs' inspection rights are barred by the four-year limitations period of California Code of Civil Procedure sections 343 (relief not otherwise provided for) in that the FAC fails to allege when plaintiffs made a written demand for inspection.

Defendants raise valid points to which plaintiffs offer no meaningful opposition. Although the FAC alleges that plaintiffs believed they would become Chandi & Sons and Chandi Brothers shareholders, the FAC's facts and inferences are that plaintiffs acquiesced to an arrangement that culminated in the promissory note to render plaintiffs no more than debtors.  The FAC lacks facts of plaintiffs' written or other request to review corporate records to support the inspection claims.  Moreover, such omission suggests the inspection claims are susceptible to limitations defenses to further defeat the inspection claims.   The inspection claims are subject to dismissal.

### Elder Abuse

In disobedience of the June 12 order, the FAC adds a (thirteenth) elder abuse claim that defendants "engaged in deceptive and fraudulent practices whereby they knew that Plaintiffs were senior citizens and they causing [sic] them to invest their life savings in order to defraud them out of such funds" to entitle plaintiffs to treble damages under California Civil Code section 3345(b).

### *June 12 Order's Bar To Add Claims*

Plaintiffs' original complaint lacked an elder abuse claim.  The June 12 order barred addition of new claims, such as the elder abuse claim, without this Court's order.  Plaintiffs'

unexplained disobedience of the June 12 order warrants dismissal of the elder abuse claim.

In addition, the elder abuse claim is insufficiently pled.  Based on plaintiffs' opposition, the elder abuse claim appears based on Mr. Singh's attempt to compel plaintiffs to persuade the Doan plaintiffs to drop their litigation.  Plaintiffs attribute Mr. Singh to state that if plaintiffs did not convince the Doan plaintiffs to settle, plaintiffs "will lose the sole source of income."

California Welfare & Institutions Code section 15610.30(a) defines "financial abuse" to include taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder, age 65 or older, "for a wrongful use or with intent to defraud, or both," or assisting in such conduct.  The elder abuse statutes address conduct that results in taking, etc. of an elder's property.  The FAC facts and inferences are that defendants had taken plaintiffs' money years prior to Mr. Singh's alleged threat in December 2012 and that plaintiffs' arrangement culminated in the promissory note in July 2008 at a time at which the FAC is silent whether plaintiffs were age 65 or older to qualify as elders.  The FAC lacks sufficient facts to support an elder abuse claim, and plaintiffs offer no meaningful legal authority of the claim.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     DISMISSES with prejudice the (first) breach of contract claim against Mr. Singh and Chandi Brothers;

2.     DISMISSES with prejudice the (second) breach of fiduciary duty claim;

3.     DISMISSES with prejudice the (third) fraud-intentional, (fourth) negligent misrepresentation, (fifth) false promise and (sixth) concealment claims;

4.     DISMISSES with prejudice the (seventh through ninth) federal securities claims;

5.     DISMISSES with prejudice the (eleventh and twelfth) corporate records inspection claims; and

6.     DISMISSES with prejudice the (thirteenth) elder abuse claim.

Based on the dismissed claims, the FAC's remaining claims are limited to the (first) breach of contract against Chandi & Sons only and the (tenth) involuntary dissolution claim

against Chandi & Sons and Chandi Brothers only.  As such, this Court:

1.     DISMISSES with prejudice this action and all claims against Mr. Singh and the Chandis and directs the clerk to enter judgment in favor of defendants Nirmal Singh, Nachhattar Chandi, Susana Chandi and Valley Petroleum, Inc. and against plaintiffs Jagjeevan Dhaliwal and Mohinder Gill in that there is no just reason to delay to enter such judgment given that plaintiffs' claims against Mr. Singh, the Chandis and Valley Petroleum and their alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b); and

2.     ORDERS the Chandi & Sons and Chandi Brothers, no later than September 4, 2013, to file and serve a F.R.Civ.P. 7(a)(2) answer to the FAC.

IT IS SO ORDERED.

Dated:   __**August 16, 2013**__                    ____**/s/ Lawrence J. O'Neill**____
                                                                    UNITED STATES DISTRICT JUDGE