# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAGJEEVAN K. DHALIWAL, an individual and MOHINDER S. GILL, an individual, | Case No. 1:13-cv-00484-LJO-SKO |
| Plaintiffs, | **ORDER STRIKING DEFENDANTS' REPLY BRIEF AND ORDER DENYING DEFENDANTS' MOTION TO FILE A COUNTERCLAIM** |
| v. | |
| николн NIRMAL SINGH, et al., | (Doc. No. 39) |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Jagjeevan K. Dhaliwal and Mohinder S. Gill filed this action on April 3, 2013, alleging claims against Defendants Nirmal Singh, Nachhattar S. Chandi, Susana E. Chandi, KS Chandi & Sons, Inc., Chandi Brothers, LLC, and Valley Petroleum, Inc.[1]

Defendants filed a motion to dismiss, which was granted, and Plaintiffs were permitted to file a First Amended Complaint ("FAC") as to certain claims. On June 29, 2013, Plaintiffs filed an FAC, and on July 20, 2013, the remaining Defendants filed a motion to dismiss. On August 16, 2013, the Court dismissed all claims against each of the Defendants except a breach of contract claim against Defendant KS Chandi & Sons, Inc. ("Chandi & Sons") and an involuntary

---

[1] Pursuant to the Court's August 16, 2013, order, only two Defendants remain: Chandi & Sons and Chandi Brothers. The claims against all other Defendants have been dismissed.

dissolution claim against Chandi & Sons and Chandi Brothers, LLC ("Chandi Brothers") (collectively, "Defendants").

On December 19, 2013, Defendants Nirmal Singh and Chandi & Sons filed a motion for leave to file a counterclaim against Plaintiffs. (Doc. 39.) On December 31, 2013, Plaintiffs filed an opposition brief. (Doc. 42.) Defendants filed a reply brief on January 17, 2014, which was untimely under the U.S. District Court for the Eastern District of California's Local Rule ("Local Rule") 230(d). Defendants did not acknowledge that the reply brief was filed out of time nor did they request leave to file a brief out of time. As such, the Defendants' reply brief (Doc. 45) is STRICKEN and it is not considered.

Having reviewed the parties' briefs and all supporting materials, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for January 22, 2013, is VACATED and the parties are not required to appear. For the reasons set forth below, Defendants' motion to file a counterclaim is DENIED.

## II.    BACKGROUND

**A.    Factual Background[2]**

**1.    Summary**

Mr. Singh is an ARCO AM PM ("AM PM") franchisee and developer who sought investors to purchase and develop AM PM gas station/convenience stores along with his brother and sister-in-law, Mr. and Ms. Chandi ("the Chandis"). The Chandis reside in Riverside County and, with Mr. Singh, own more than 10 California AM PMs. Chandi & Sons and Chandi Brothers are California corporations principally located in Turlock, California. At relevant times, Mr. Singh was the chief financial officer ("CFO") and shareholder of Chandi Brothers, a California corporation. Plaintiffs are husband and wife and Canadian physicians who claim to have been bilked out of $1.35 million invested in the AM PMs at issue in this action.

**2.    Plaintiffs' Inducement to Invest**

As alleged in the FAC, in September 2006, Mr. Singh induced Plaintiffs to pay $1.35

---

[2] The factual background is taken from the District Court's summary of Plaintiffs' factual allegations as set forth in the Court's order of August 16, 2013. (Doc. 25.)

2

1 million to acquire ownership interests in each of Chandi & Sons and Chandi Brothers and "to
2 purchase gas stations." Mr. Singh assured Plaintiffs that each station would make $30,000 per
3 month after six months of operation. Mr. Singh prepared forged articles of incorporation of
4 Chandi & Sons which reflected that Chandi & Sons was authorized to issue 1,000 shares although
5 the bona fide articles of incorporation reflect that Chandi & Sons was authorized to issue 2,000
6 shares.

7 On September 5, 2006, "Plaintiffs gave $1.35 million to Defendants." Board of Director
8 minutes reflect that Plaintiffs each owned 25 percent of Chandi & Sons' and Chandi Brothers'
9 shares and that Mr. Singh owned the remaining 50 percent of the shares of the two companies.
10 Plaintiffs believe that $850,000 of their money was used to purchase an AM PM on Hatch Road in
11 Ceres, California ("Hatch AM PM"), and the remaining $500,000 was devoted to an AM PM on
12 Mitchell Road in Ceres, California ("Mitchell AM PM"). Mr. Singh stated he would sell the
13 Hatch AM PM for a $1 million profit in July 2007 and give 50 percent of the sale profit to
14 Plaintiffs. Mr. Singh executed a September 27, 2006, deed of trust on behalf of the Chandi
15 Brothers "in consideration of" an $850,000 "indebtedness." Plaintiffs assert that the trust deed was
16 to be recorded against an AM PM on Glenwood Road in Turlock, California ("Glenwood AM
17 PM"), and that they had acquired collectively 50 percent of the shares of each of Chandi & Sons
18 and Chandi Brothers.

19     **3.    Plaintiffs' Certificate of Investment**

20 In January 2007, Mr. Singh claimed that the AM PMs were doing well and paid Plaintiffs
21 $25,000 as well as "payments of $4,600 per month as share payments" in Chandi & Sons and
22 Chandi Brothers.

23 In July 2007, after a sale of the Hatch AM PM did not close, Mr. Singh stated he would
24 buy Plaintiffs' shares of the Hatch AM PM for $200,000, rather than the $500,000 originally
25 promised upon closing the sale, and would pay Plaintiffs with a refinanced loan. On July 20,
26 2007, Mr. Singh signed a Certificate of Insurance ("COI") in his capacity as CFO for Chandi &
27 Sons and Chandi Brothers to certify Plaintiffs' $1,350,000 investment on November 22, 2006, for
28 a term of 18 months in the Hatch AM PM. Eight hundred and fifty thousand dollars ($850,000)

3

of Plaintiffs' investment was secured by a deed of trust, ostensibly on an AM PM on Lander Avenue in Turlock, California. The COI commits Chandi & Sons and Chandi Brothers to pay eight percent interest each month and "a fixed profit of $200,000." Mr. Singh told Plaintiffs they would continue to own their Chandi & Sons and Chandi Brothers shares until Plaintiffs were repaid.

In December 2007, Mr. Singh stated that the U.S. economy was "very bad" and that banks were not making loans, which meant he would require another year before he could refinance the loan. Mr. Singh continued to make timely $8,933 monthly interest payments on Plaintiffs' $1.35 million investment but stopped making $4,600 monthly distributions on shares, "stating that due to the bad economy the station . . . was actually losing money."

### 4.     Chandi & Sons' Promissory Note

In July 2008, Mr. Singh was still unable to refinance the Hatch AM PM and unable to pay Plaintiffs $200,000. Mr. Singh told Plaintiffs that the Hatch AM PM was not doing very well and asked for an extension of time. Mr. Singh, as Chandi & Sons' owner, executed a July 15, 2008, Promissory Note with Balloon Payment ("promissory note") to pay Plaintiffs $1,350,000 "payable in monthly interest installments of $8,933.00 calculated at an interest of 8% per annum, concluding with one Balloon Payment of the principal amount plus any interest and/or penalties outstanding." Plaintiffs identify the Hatch AM PM as the secured property for the promissory note and contend the promissory note superseded the COI which was rendered invalid.

Mr. Singh represented to Plaintiffs that the promissory note was better security because it waived statute of limitations defenses. The promissory note states that "[e]ach maker . . . waives presentment, demand and protest and the right to assert any statute of limitations."

When Plaintiffs asked Mr. Singh about distribution on shares, Mr. Singh represented that "the station was just breaking," there was no income, and he could not pay out any distribution on the shares. In September 2009, Mr. Singh told Plaintiffs that a bank had agreed to refinance his AM PMs and that he would be able to pay their note in about three months.

### 5.     India Home Sale Proceeds

In November 2009, Mr. Singh borrowed $177,500 from the sale of Plaintiffs' home in

4

India to improve the Glenwood AM PM.  Mr. Singh represented that, "for two years he would make no interest payments and would return the money in full, but if he did not return the money in full by the end of one year, he would pay 8% on it."

**6.     Plaintiffs' Request for Return of Funds**

In January 2010, Plaintiffs inquired of Mr. Singh about the refinancing.  Mr. Singh represented that "the bank had refused to refinance the stations."  Having grown tired of Mr. Singh's excuses for inability to refinance, Plaintiffs "asked for their funds back."  Mr. Singh responded that Plaintiffs had two choices:

1.  Purchase the Hatch AM PM for $4.6 million, which would require Plaintiffs to obtain an unavailable loan, operate the Hatch AM PM without Mr. Singh, and face the likelihood of losing their investment; or

2.  Allow Mr. Singh to continue to operate the Hatch AM PM for another year as the U.S. economy improved and he could pay Plaintiffs back.

Mr. Sing told Plaintiffs the following:

1.  Pursuant to the promissory note, Plaintiffs had consented to an automatic renewal and waived right to presentments;

2.  Plaintiffs were compelled to wait for Mr. Singh to refinance the Hatch AM PM;

3.  Plaintiffs should feel safe because the promissory note waived limitations defenses; and

4.  Mr. Singh would stop making payments if Plaintiffs filed a lawsuit and would drag out the case during which Plaintiffs would receive no income.

Apparently in January 2010, feeling as though they had no choice, Plaintiffs extended the promissory note.

**7.     Continuing Payments To Plaintiffs**

From January 2010, Mr. Singh continued to make $8,933 monthly payments representing eight percent interest on $1.35 million.  In January 2011, Plaintiffs asked for the promissory note's balloon payment and threatened litigation if it was not paid.  Mr. Singh stated that the AM PMs had improved and that he would start to pay on Plaintiffs' shares and the principal amount of the

promissory note.

Beginning in March 2011, Mr. Singh made $15,000 monthly payments comprised of $8,933 interest on the promissory note and $6,067 in distributions on shares of Chandi & Sons and Chandi Brothers. In May 2011, Mr. Singh increased the monthly payments to $15,800 with the additional $800 as payment toward the principal of the promissory note. In May 2011, Mr. Singh represented to Plaintiffs that he would pay off the promissory note within 18 months as he would obtain refinancing from Wells Fargo Bank within a year.

In December 2011, Mr. Singh wired $40,000 to Plaintiffs to be applied toward the principal amount of the promissory note.

**8.     Wells Fargo Refinancing**

In March 2012, Mr. Singh represented to Plaintiffs that he was seeking Wells Fargo Bank refinancing for the Hatch AM PM and that he would obtain a line of credit to make a $600,000 lump sum payment to Plaintiffs. In June 2012, Mr. Singh misrepresented that Wells Fargo Bank refused to refinance when, in fact, Wells Fargo Bank had provided refinancing of $7.3 million for AM PMs on May 9, 2012, including the Hatch AM PM, and had provided a $600,000 line of credit that Mr. Singh did not use to pay Plaintiffs but instead used to purchase a property in Modesto.

**9.     Termination of Payments to Plaintiffs**

In October 2012, Mr. Singh increased the monthly payments to Plaintiffs to $16,000 with allocations of $8,933 for interest on the promissory note, $6,067 for distribution on shares, and $1,000 for principal on the promissory note.

In December 2012, after Kevin and Pauline Doan and Harpreet Dhaliwal (the "Doan plaintiffs") filed suit against Mr. Singh, Chandi & Sons, and Chandi Brothers, Mr. Singh stopped making payments to Plaintiffs.[3] In January 2013, Mr. Singh told Plaintiffs the following:

1.     Mr. Singh would make no further payments unless Plaintiffs compelled the Doan plaintiffs to dismiss their suit and settle with Mr. Singh on his terms;

---

[3] The Doan plaintiffs filed a lawsuit in this Court entitled *Kevin Doan, et al. v. Nirmal Singh, et al.*, Case No. CV F 13-0531 LJO SMS.

    2.       Mr. Singh would pay Plaintiffs $25,000 monthly for two years and then make a balloon balance payment if the Doan plaintiffs dismissed their litigation; and

    3.       Plaintiffs needed to revoke the promissory note.

Plaintiffs responded that they would not intimidate the Doan plaintiffs to dismiss their lawsuit and that Plaintiffs were considering contacting the Doan plaintiffs' attorney. Mr. Singh stated he would drag out litigation, use Plaintiffs' money to fight them, and cause Plaintiffs "to spend a lot of money." Mr. Singh further stated that if Plaintiffs succeeded in litigation after three years, Mr. Singh would file for bankruptcy and never return Plaintiffs' money in order to compel Plaintiffs to force the Doan plaintiffs to drop their lawsuit.

The FAC identifies November 2012 as the last payment date from Mr. Singh to Plaintiffs. In January 2013, Plaintiffs told Mr. Singh that he had 45 days to resume payments prior to initiation of litigation by Plaintiffs. Plaintiffs sent Mr. Singh an email indicating they would call the promissory note due if Mr. Singh did not resume payments. On February 14, 2013, Plaintiffs sent Defendants a notice of default and demand for full payment of the promissory note.

**B.    Procedural Background**

On April 3, 2013, Plaintiffs filed their original complaint alleging breach of contract, fraud, conversion, securities claims and securities-related claims. On June 12, 2013, the Court dismissed with prejudice a breach of contract claim against Mr. Singh. Plaintiffs were given limited leave to amend certain claims. On June 29, 2013, Plaintiffs filed their FAC alleging breach of contract, fraud, and securities claims; Defendants filed another motion to dismiss.

On August 16, 2013, the Court issued an order on Defendants' motion to dismiss clarifying that Mr. Singh was not subject to a breach of contract claim, as that claim had been dismissed with prejudice by the Court in its June 12, 2013, order. The only claims the Court found viable were a breach of contract claim against Chandi & Sons, and an involuntary dissolution claim against Chandi & Sons and Chandi Brothers. As a result, only two defendants and two claims remained. The remaining Defendants filed an Answer to the FAC on September 3, 2013. (Doc. 27.) The Answer did not include any counterclaims.

On October 9, 2013, following a scheduling conference, a Scheduling Order was issued.

7

The Scheduling Order set December 6, 2013, as the deadline for amending the pleadings. (Doc. 38, 3:8:10.) On December 19, 2013, Defendants filed a motion to file a counterclaim. (Doc. 39.) Defendants contend that the basis for filing a counterclaim arose only after it filed its answer to the FAC.

**C.  Defendants' Proposed Counterclaim**

Defendants' proposed counterclaim alleges that Plaintiffs wrongfully contend they are shareholders of Chandi & Sons. On October 8, 2013, Plaintiffs (i.e., Counter-Defendants) purported to act as shareholders of Chandi & Sons and held a shareholders' and a Board of Directors' meeting. (Doc. 39-1, ¶ 12.) As a result of the meeting, Mr. Singh was removed as an officer and director. Harpreet Dhaliwal was appointed as President and Secretary, was authorized to terminate Chandi & Sons' business relationship with its accountants and lawyers, and was authorized to contact BP Arco and all vendors with business relationships with Chandi & Sons and notify them that Mr. Singh was no longer the owner or director of the company. (Doc. 39-1, ¶ 13.)

On October 18, 2013, in the early morning hours, Mr. Dhaliwal, a man in a bullet-proof vest and with a gun, two more adult men, and a woman named Amanda Bui took over by force the Hatch AM PM on the pretext that Mr. Dhaliwal was acting as the new President of Chandi & Sons. (Doc. 39-1, ¶ 14.) Upon entering the store, Mr. Dhaliwal ordered employees not to talk to each other, not to make phone calls, not to touch the register or drop any money into the safe, and to stand only at the front counter. Mr. Dhaliwal directed that the front door be chained closed and that the back door be barricaded with a wall of beverage cases several feet deep. (Doc. 39-1, ¶ 14.)

One of the Hatch AM PM employees was able to contact the police, who rushed to the store. When the police arrived, Mr. Dhaliwal, Ms. Bui, the armed man, and two other adult men left the store in custody. Upon learning of the civil dispute, and after Dhaliwal claimed that he was the President of Chandi & Sons, the police ordered Dhaliwal and his group to leave the store premises and address their claims in court. (Doc. 39-1, ¶ 15.)

Also on October 18, 2013, Dhaliwal sent many emails to Mr. Singh and his counsel

claiming that he was the President for Chandi & Sons, that the attorneys for Chandi & Sons were fired, and that Mr. Singh should turn over all property of Chandi & Sons to Dhaliwal and cease taking action for Chandi & Sons.

On October 21, 2013, Counter-Defendants signed minutes of a meeting of the shareholders and Board of Directors of Chandi & Sons, purportedly ratifying and approving Mr. Dhaliwal's attempted armed take-over of the gas station and minimart. (Doc. 39-1, ¶ 17.)

In the days following the failed armed take-over of the Hatch AM PM, in a pending state-court action,[4] Defendants filed a motion for a temporary restraining order ("TRO") and order to show cause ("OSC") why a preliminary injunction should not be issued to stop further dangerous and harassing conduct by Mr. Dhaliwal. On October 22, 2013, on the evening before the hearing on the TRO and OSC, Mr. Dhaliwal filed a Chapter 13 petition for bankruptcy relief in the U.S. Bankruptcy Court for the Eastern District of California, purportedly on behalf of Chandi & Sons. (Doc. 39-1, ¶ 22.) A motion to dismiss the bankruptcy petition was filed by Mr. Singh. On November 1, 2013, the Bankruptcy Court issued an order that the October 22, 2013, petition purporting to commence a bankruptcy case for Chandi & Sons was void and a nullity. The Court indicated it "had not been presented with evidence that Harpreet Dhaliwal is an authorized officer, that the persons asserting to be directors are properly elected, and that the persons asserting to have elected the directors are the true owners of the stock of [Chandi & Sons]." (*In re KS Chandi & Sons, Inc.*, Case No. 13-bk-91897, Doc. 59.)

Defendants contend that the unauthorized filing of the bankruptcy petition wreaked havoc on the business of Chandi & Sons. (Doc. 39-1, ¶ 23.) Its lenders and vendors have threatened to freeze its accounts and, in many cases, put delivery of goods on a cash-on-delivery basis. (Doc. 39-1, ¶ 23.)

Pursuant to this factual predicate, Defendants seek to amend their answer to include counterclaims for declaratory relief, trespass to land, negligence, slander of title, malicious prosecution, interference with contractual relations, and interference with prospective economic advantage.

---

[4] The case number is not identified by Defendants.

9

### III.   DISCUSSION

Once the deadline for amending the pleadings established in the court's pretrial scheduling order has expired, Federal Rule of Civil Procedure 16, which controls the modification of a court's scheduling order, governs a party's ability to amend its pleadings. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1991). Rule 16 provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16's 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "Good cause" requires a showing that the deadlines of the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* "[T]he existence or degree of prejudice to the party opposing the modification" may supply "additional reasons to deny" a request for leave to amend, but "the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.*

Here, because the deadline for filing a motion to amend the pleadings was December 6, 2013, and Defendants' motion was not filed until December 19, 2013, Defendants' ability to amend its Answer to add counterclaims is governed by Rule 16. Defendants' motion, however, fails to address Rule 16 or how Defendants were diligent despite filing their motion out of time. Additionally, Defendants' motion fails to request modification of the Court's scheduling order or even acknowledge that the motion was filed beyond the deadline. Where the deadline for filing particular motions has passed, a party's failure to request modification of the court's scheduling order alone is sufficient grounds for the court to deny the party's motion to amend its pleading. *See Johnson*, 975 F.2d at 608; *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (district courts may deny as untimely a motion filed after the scheduling order cut-off date where no request to modify the order is made). Defendants' failure to request a schedule modification is itself, therefore, a basis to deny the motion.

Moreover, even assuming Defendants had requested to modify the schedule to accommodate their late motion filing, there is no indication in the record that Defendants have exercised diligence to establish the requisite good cause necessary to amend the schedule.

10

1 Defendants' request to file a counterclaim is predicated on events arising after Defendants filed
2 their Answer to the FAC, and the conduct underlying the proposed counterclaim occurred between
3 October 18 and November 1, 2013.  Defendants provide no explanation why they waited until
4 December 19, 2013, to seek to file a counterclaim when they were aware of the events giving rise
5 to the counterclaim by November 1, 2013.  Defendants failed to provide any explanation why
6 there was delay in filing their motion or why, at a minimum, they were unable to seek an
7 extension of the amendment deadline prior to its expiration.  Defendants' motion to amend the
8 pleadings is untimely, no motion to amend the scheduling order has been filed in conjunction with
9 the motion to file a counterclaim, and there is no indication that Defendants were diligent in
10 seeking to file a counterclaim such that there is good cause to amend the schedule.  Under these
11 circumstances, Defendants' motion is denied.  *Johnson*, 975 F.2d at 609 ("the focus of the inquiry
12 is upon the moving party's reasons for seeking modification.  If that party was not diligent, the
13 inquiry should end.").

14     Finally, the counterclaim is brought on behalf of Mr. Singh and Chandi & Sons.  As
15 Plaintiffs correctly note, all claims against Mr. Singh were dismissed, and he is no longer a
16 Defendant in this action.  As such, he is not a party who may file a counterclaim against Plaintiffs.

### IV.  CONCLUSION AND ORDER

18     In sum, Defendants' motion to file a counterclaim is untimely, and Defendants failed to
19 seek any modification to the scheduling order pursuant to Rule 16.  Further, even if such a motion
20 had been filed, there is no indication that Defendants have been diligent such that modification of
21 the scheduling order to allow amendment after the deadline would be appropriate.

22     Accordingly, IT IS HEREBY ORDERED that

23     1.    Defendants' reply brief is STRICKEN due to its untimeliness; and

24     2.    Defendants' motion to amend the answer to file counterclaims is DENIED.

IT IS SO ORDERED.

26  Dated:  **January 21, 2014**                    **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE

11